**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL ROXBERRY, MICHELLE : 
ROXBERRY, RANDY PERDUE, BRITT : 
MANNING, TOM GRUTSCH, THOMAS : 
LEE SMAWLEY, BOB JOHNSON, : 
RENAE RIDDLE, and MAKENZIE : 
SNYDER, on behalf of themselves and all : CASE NO. 1:16-cv-02009-JEJ
others similarly situated, : 
                              : 
        Plaintiffs, : 
                              : Judge John E. Jones, III
      v. : 
                              : 
SNYDER'S-LANCE, INC., S-L ROUTES, : 
LLC, and S-L DISTRIBUTION : 
COMPANY, INC., : 
                              : 
        Defendants. : 

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**

      Originating Plaintiffs (as defined below) and Defendants (as defined below) voluntarily stipulate and agree to this Confidential Settlement Agreement and Release as follows for settlement purposes only.

    1.      <u>**Definitions**</u>.  The following terms will have the following meanings:

        1.1     **"Action"** means the above-captioned lawsuit.

        1.2     **"Administrator"** means, solely for purposes of effectuating this Agreement, Settlement Services, Inc., 2032-D Thomasville Road, Tallahassee, FL 32308.

        1.3     **"Agreement"** means this "Confidential Settlement Agreement and Release."

1.4    **"*Bankalter*"** means *Michael Bankalter, et al. v. S-L Distribution Co., Inc., et al.*, Case No. 2017-SU-000549, filed in the Court of Common Pleas of York County, Pennsylvania.

1.5    **"Claim Deadline"** means forty-five (45) calendar days after the Preliminary Approval Date.

1.6    **"Class Counsel"** means, solely for purposes of effectuating this Agreement, Winebrake & Santillo, LLC and Woolf, McClane, Bright, Allen & Carpenter, PLLC.

1.7    **"Class Counsel Expenses"** means the amount not to exceed $35,000.00 that the Court may approve that will be paid to Class Counsel from the Maximum Settlement Amount for Class Counsel's expenses and costs (both those incurred to date and those to be incurred) from bringing and prosecuting the Action, including, but not limited to, all fees and expenses charged by the Administrator.

1.8    **"Class Counsel Fees"** means the amount not to exceed $525,000.00 that the Court may approve that will be paid to Class Counsel from the Maximum Settlement Amount for Class Counsel's attorneys' fees (both those incurred to date and those to be incurred) from bringing and prosecuting the Action.

1.9    **"Class Members"** means, for settlement purposes only, the individuals and Distributor Entities listed in Exhibit A, as well as anyone who expresses to Class Counsel that they wish to join the Action, who sign a written notice of consent to join Action, and/or who opts in at any time before Preliminary Approval.  All current, known Class Members covered by this Settlement are listed in Exhibit A.  As set forth in Exhibit A, the Class Members are grouped into three categories: (a) Current ADR Contractors; (b) Current Non-ADR Contractors; and (c) Former Contractors.

2

1.10    **"Contract Weeks"** means: (a) for each Tennessee Class Member, the number of weeks between July 15, 2013 and July 15, 2017 in which the Class Member owned, operated, and/or performed work for a distribution route in Tennessee; and (b) for each non-Tennessee Class Member, the number of weeks between March 22, 2014 and July 15, 2017 in which the Class Member owned, operated, and/or performed work for a distribution route outside of Tennessee.  The Contract Weeks shall not be double counted, that is, for example, if Mr. B ran a route delivering Defendants' products for A,B,C LLC for 12 weeks, and A,B,C LLC had a Distributor Agreement with Defendant(s) for only 12 weeks, then the Contract Weeks for Mr. B and A,B,C LLC total only 12 weeks together, not 24 weeks.

1.11    **"Court"** means the United States District Court for the Middle District of Pennsylvania.

1.12    **"Current ADR Contractors"** means those Class Members who currently own, operate, and/or perform work for a distribution route pursuant to a Distributor Agreement that includes a provision(s) referring certain disputes to alternative dispute resolution.  Such Class Members are identified in Exhibit A.

1.13    **"Current Non-ADR Contractors"** means those Class Members who currently own, operate, and/or perform work for a distribution route pursuant to a Distributor Agreement that does not include a provision(s) referring certain disputes to alternative dispute resolution.  Such Class Members are identified in Exhibit A.

1.14    **"Defendants"** means Snyder's-Lance, Inc., S-L Routes, LLC, and S-L Distribution Company, Inc. (now known as S-L Distribution Company, LLC).

1.15    **"Defense Counsel"** means Winston & Strawn LLP.

1.16    **"Dispute Resolution Provision"** means the document attached to this Agreement as Exhibit C.

1.17    **"Distributor Entity"** means a business entity (e.g., corporation, limited liability company) that entered into a Distributor Agreement with one or more Defendants, including but not limited to the Distributor Entities listed in Exhibit A.

1.18    **"Distributor Agreement"** means a written distributor agreement with one or more Defendants for the purchase and distribution of snack food products sold by a Defendant.

1.19    **"Effective Date"** means the later of (a) thirty-one (31) calendar days after the Final Approval Date or (b) if the Court's final approval order is appealed and is affirmed in all respects on appeal, with no possibility of subsequent appeal or other judicial review, ten (10) calendar days after the final resolution of the appeal.

1.20    **"Extra ADR Consideration"** means, for Current Non-ADR Contractors, an additional $3,000 as consideration in exchange for the Dispute Resolution Provision. However, the maximum amount that will be paid for each Distributor Agreement, shall be $3,000.  For example, if Mr. B currently runs a route for A,B,C LLC, and the Distributor Agreement does not have an ADR provision, the total amount of Extra ADR Consideration offered for Mr. B and/or A,B,C LLC would be $3,000, not $6,000.

1.21    **"Final Approval Date"** means the date on which the Court enters an order granting final approval of the Settlement and dismissing the Action with prejudice.

1.22    **"Former Contractors"** means those Class Members who no longer own, operate, and/or perform work for a distribution route pursuant to a Distributor Agreement.  Such Class Members are identified in Exhibit A.

1.23    **"Individual Payment Amount"** means, for each Class Member, the amount calculated through the following formula: {[Net Settlement Amount]} *multiplied by* {[individual Class Member's Contract Weeks] *divided by* [the total combined Contract Weeks of all Class Members]}. The Individual Payment Amounts may be amended if additional Class Members are added to the Settlement class up to the date of Preliminary Approval.

1.24    **"Maximum Settlement Amount"** means $1,600,000.00**.**

1.25    **"Net Settlement Amount"** means the net amount calculated through the following formula: [$1,600,000.00] *minus* [the amount of Court-approved Class Counsel's Fees] *minus* [the amount of Court-approved Class Counsel's Expenses] *minus* [the sum of all Court-approved Service Awards to Originating Plaintiffs] *minus* [$3,000 *multiplied* by the number of Current Non-ADR Contractors].

1.26    **"Notice Form"** means the form attached to this Agreement as Exhibit B.

1.27    **"Opt-In"** means all individuals, including Originating Plaintiffs, who have signed a written notice of consent to join the Action.  The Opt-Ins are identified in Exhibit A.

1.28    **"Originating Plaintiffs"** means Michael Roxberry, Michelle Roxberry, Randy Perdue, Britt Manning, Tom Grutsch, Thomas Lee Smawley, Bob Johnson, Renae Riddle, and Makenzie Snyder and each Distributor Entity for which they have held any ownership interest or performed services for.

1.29    **"Preliminary Approval Date"** means the date on which the Court enters the order preliminarily approving the Settlement.

1.30    **"Released Parties"** means Defendants and any and all of their respective past, current and future parents, partners, joint venturers, subsidiaries, affiliates, shareholders,

predecessors, agents, officers, directors, employees, heirs, spouses, administrators, executors, successors, assigns, representatives, insurers, attorneys, accountants and/or other persons and entities acting on any of their behalf.

      **1.31**    **"Service Award(s)"** means $19,000.00 or the amount that the Court may approve that will be paid to each Originating Plaintiff from the Maximum Settlement Amount for instituting and prosecuting the Action.

      **1.32**    **"Settlement"** means the agreements, terms and conditions described in this Agreement.

      **1.33**    **"*Tavares*"** means *Antonio Tavares et al. v. S-L Distribution Co., Inc. et al.*, Case No. 1-13-cv-01313-JEJ, filed in the United States District Court, Middle District of Pennsylvania.

      **2.**    <u>**Maximum Settlement Amount.**</u>

      **2.1**    Defendants' maximum total payment under the Settlement and this Agreement shall not under any circumstances exceed the Maximum Settlement Amount of $1,600,000.00. Defendants may unilaterally revoke this Agreement if future circumstances require them to pay an amount greater than the Maximum Settlement Amount, and, in the event of such revocation, the Settlement and this Agreement shall be null and void and of no further force and effect.  The Maximum Settlement Amount is inclusive of the following: (a) any and all Individual Payment Amounts and Extra ADR Consideration to Class Members; (b) Class Counsel's Fees; (c) Class Counsel's Expenses, which includes the Administrator's fees and expenses; and (d) Service Awards.

      **2.2**    This Settlement and the Maximum Settlement Amount apply to and are inclusive of all individuals and Distributor Entities listed in Exhibit A, as well as anyone who

expresses to Class Counsel that they wish to join the Action, who signs a written notice of consent to join Action, and/or who opts in at any time before Preliminary Approval, unless they timely and validly exclude themselves from the Settlement pursuant to Section 11 of this Agreement.

3.    **Condition Precedent.**  This Settlement is conditioned on and shall become final and effective only upon the occurrence of both of the following events: (a) the Court enters an order granting final approval of the Settlement; and (b) the passage of the Effective Date.

4.    **Representations by Class Counsel, Originating Plaintiffs, and Opt-In Plaintiffs.**

4.1    Class Counsel represent that they have disclosed all individuals who have signed opt in consents to join this Action and/or who have asked to pursue claims for overtime against Defendants.

4.2    During the pendency of this Action through Final Approval, Class Counsel and Originating Plaintiffs, agree that they will do nothing, directly or indirectly, to solicit additional individuals to pursue any claims that were alleged in, or could have been alleged in, this Action against Defendants.  In addition, the Notice to the Opt-In Plaintiffs will indicate that by accepting the Settlement, the Opt-In Plaintiff agrees that he/she will do nothing, directly or indirectly to solicit additional individuals to pursue any claims that were alleged in, or could have been alleged in, this Action against Defendants.

4.3    Class Counsel represent that all individuals they believe should be on the list of Class Members are, in fact, included on the list in Exhibit A.  This includes 22 individuals who expressed interest in joining the Action after the mediation on June 8, 2017, but have not thus far opted-in.   Class Counsel agrees to disclose to Defense Counsel any additional

7

individuals who express to Class Counsel that they wish to join the Action, who sign an opt-in consent to join this Action, and/or who opts in at any time before Preliminary Approval. To the extent someone files an opt in consent form after Preliminary Approval, Class Counsel agrees to join Defense Counsel's Motion to Dismiss the Opt-In.

5.      **Defendants' Additional Revocation Rights.** In addition to Defendants' rights pursuant to Section 2 of this Agreement, Defendants may unilaterally revoke this Agreement, within ten (10) business days of the Claim Deadline, if as of the Claim Deadline: (a) more than five percent (5%) of all Class Members exclude themselves from the Settlement; (b) more than five percent (5%) of all Opt-Ins exclude themselves from the Settlement; (c) more than five percent (5%) of all Current Non-ADR Contractors do not agree to the Dispute Resolution Provision; *or* (d) any of the Originating Plaintiffs exclude themselves from the Settlement. Defendants shall have the option of calculating the percentages set forth in the foregoing sentence based upon either (a) a per capita calculation determined by, for example, the total number of all Class Members who exclude themselves from the Settlement, *divided by* the total number of Class Members; (b) a per capita calculation determined by, for example, the total number of Opt-Ins who exclude themselves from the Settlement, *divided by* the total number of Opt-Ins; (c) the total of the Individual Payment Amounts for all Class Members who exclude themselves from the Settlement, *divided by* the Net Settlement Amount; *or* (d) a per capita calculation determined by, for example, the total number of Current Non-ADR Contractors who do not agree to the Dispute Resolution Provision, *divided by* the total number of Current Non-ADR Contractors. In the event that Defendants revoke this Agreement pursuant to this Section 5, the Settlement and this Agreement shall be null and void and of no further force and effect.

6.    **Releases.**

6.1    Upon the Effective Date, in consideration of the benefits set forth in this Agreement, all Class Members who do not timely and validly exclude themselves from the Settlement pursuant to Section 11 of this Agreement, on behalf of themselves and their respective past, current and future heirs, spouses, administrators, executors, estates, attorneys, insurers, successors, assigns, agents, employees, representatives and all Distributor Entities and any other business entities in which they have performed services and/or they or any of their family members have or ever had an ownership interest and all past, current and future officers, directors, employees, owners, shareholders and members of all such Distributor Entities and business entities, hereby forever release, discharge and covenant not to sue the Released Parties from and with respect to all, known and unknown, claims, causes of action, and/or demands arising through the Effective Date against the Released Parties alleging, arising from, or relating, in any way, to the claimed misclassification or treatment of a Class Member or the Class Members as independent contractors or non-employees, the alleged unjust enrichment by Defendants, the alleged breach of contract and breach of covenant of good faith and fair dealing in connection with Distributor Agreements, and/or the alleged unlawful, unfair, or deceptive acts or practices by Defendants affecting the conduct of trade or commerce, including all claims, causes of action and/or demands: (1) arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and/or any other federal, state or local law, statute, or regulation relating to wages, expenses, or compensation; (2) for unjust enrichment, quantum meruit, breach of contract, breach of the covenant of good faith and fair dealing, fraud or fraud in the inducement, conversion, theft of labor, or other common law cause of action related to any alleged failure to pay for work performed or to be performed or expenses incurred or arising out of, related to, or

in connection with a Distributor Agreement; (3) arising under the Tennessee Consumer Protection Act at Sections 47-18-101 et seq. of the Tennessee Code, any other state consumer protection action, and/or any other similar or comparable federal, state or local law; (4) for unpaid or withheld compensation or wages, overtime, holiday pay, vacation pay or benefits, including, but not limited to, pension benefits; (5) for deductions from payments to the Class Members, for route loan payments, or for the failure to reimburse expenses that were paid or incurred by or for the Class Members, including claims for cost recovery, or cost reimbursement, mileage, vehicle expenses, and/or cost of returns or stales; (6) for failure to make accurate payments that are derivative of, or in any way related to, any wage and hour, overtime, benefit or other claims based upon the Class Members' alleged misclassification; (7) otherwise arising from the Class Members' alleged misclassification; and (8) for compensatory damages, special damages, punitive damages, other damages, legal costs, expenses, attorneys' fees, penalties, insurance payments, interest, taxes and/or injunctive, declaratory or equitable relief which arise from or relate to the claims or causes of action described in Subparagraph (1) through Subparagraph (7) above under any federal, state or local laws, statutes or regulations (collectively, the "Released Claims"). The Released Claims include all claims and causes of action that were alleged in, or could have been alleged in, the Action. Without limiting the generality of the preceding sentences, this release is intended as a full and complete release and discharge of and from all Released Claims of all Class Members who do not timely and validly exclude themselves from the Settlement pursuant to Section 11.

      **6.2**    For and in the consideration of the payment of whatever amount of fees and expenses is approved by the Court (which may be less than the amount proposed by this Agreement), each Class Counsel releases any and all claims, causes of action, obligations,

demands, damages, liabilities, interest, costs, fees and expenses of whatever kind and nature, including, but not limited to, attorneys' fees, whether known or unknown, whether in contract, tort, fraud, equity or otherwise, whether statutory or common law, which Class Counsel have, had or claim to have, prior to the Effective Date, against the Released Parties.

6.3    This Agreement does not limit or supersede, in any way, the settlement agreements and the releases therein that were approved respectively by: (a) the United States District Court for the Middle District of Pennsylvania in *Tavares*, which settlement agreement and release remain in full force and effect and continue to apply; and (b) the Court of Common Pleas of York County, Pennsylvania in *Bankalter*, which settlement agreement and release remain in full force and effect and continue to apply.  However, to the extent that a Class Member is bound by this Agreement and by the release in *Tavares* and/or *Bankalter*, the releases in this Agreement and additional obligations by the Class Member in this Agreement shall also apply to the Class Member.

7.    **Resolution of Future Disputes.**

7.1    All Current Non-ADR Contractors who do not timely and validly exclude themselves from the Settlement and who return a signed Dispute Resolution Provision on or before the Claim Deadline will be bound by the Dispute Resolution Provision, which shall be incorporated into their current Distributor Agreements.

7.2    All Current Non-ADR Contractors who do not timely and validly exclude themselves from the Settlement and who return a signed Dispute Resolution Provision on or before the Claim Deadline will receive an extra $3,000 payment, capped out at $3,000 per current route for which they have a current Distributor Agreement, as consideration for agreeing to be bound by the Dispute Resolution Provision, and this $3,000 payment is in addition to their

Individual Payment Amount.  However, the maximum Extra ADR Consideration amount that will be paid for each current Distributor Agreement shall be $3,000.  For example, if Mr. B currently runs a route for A,B,C LLC, and the Distributor Agreement does not have an ADR provision, the total amount of Extra ADR Consideration offered for Mr. B and/or A,B,C LLC would be $3,000, not $6,000.

       **7.3**    The Distributor Agreements of all Current ADR Contractors, including any terms related to the resolution of disputes, shall remain in full force and effect, and are unaffected by the terms of this Agreement.

       **8.**    <u>**Preliminary Approval Motion.**</u> Upon the execution of this Agreement, Class Counsel will promptly prepare and file with the Court an unopposed motion, in a form agreeable to Defense Counsel, seeking entry of an order certifying, for settlement purposes only, a settlement class consisting of all Class Members, preliminarily approving the Settlement, authorizing distribution of the Notice Forms, and scheduling a final approval hearing.   Class Counsel shall provide a draft of the preliminary approval motion to Defense Counsel at least three (3) business days before filing with the Court.

       **9.**    <u>**Notice to Class Members.**</u>   No later than five (5) business days after the Preliminary Approval Date, the Administrator will mail to all Class Members, a package containing: (a) the appropriate Notice Form, as modified to correspond to each Class Member's classification as a Current Non-ADR Contractor, Current ADR Contractor, and/or Former Contractor; and (b) for Current Non-ADR Contractors, the Dispute Resolution Provision and a postage-paid envelope bearing the Administrator's return address. If the Postal Service returns any package with a forwarding address, the Administrator will promptly re-mail the package to the forwarding address.  If the Postal Service returns any package without a forwarding address,

the Administrator will make all good faith and reasonable efforts to obtain the Class Member's current mailing address and will promptly re-mail the package to any updated address. In addition, nothing in this Section 9 is intended to prevent Defendants from distributing extra packages to the Class Members covered by this Section in order to ensure that such packages are received, but the obligation to distribute notice of the Settlement and the related forms shall remain with the Administrator.

10.     **Objections.** Class Members desiring to object to the Settlement must do so in writing in the manner described in the Notice Form. All objections must be postmarked on or before the Claim Deadline, and any objections postmarked after the Claim Deadline shall be null and void. Within four (4) business days after the Claim Deadline, Class Counsel will promptly file all timely and valid written objections with the Court and serve copies on Defense Counsel.

11.     **Exclusions.** Class Members desiring to exclude themselves from the Settlement must do so in writing in the manner described in the Notice Form. All exclusion requests must be postmarked by the Claim Deadline, and any request for exclusion postmarked after the Claim Deadline shall be null and void. Class Members who timely submit exclusion requests are not bound by or subject to the Settlement. Within two (2) business days after the Claim Deadline, the Administrator shall advise all counsel in writing of any Class Members who timely exclude themselves from the Settlement. If a Class Member timely and validly excludes himself or herself from the Settlement, then his/her Individual Payment Amount shall revert to Defendants. Additionally, if a Current Non-ADR Contractor does not sign and return the Dispute Resolution Provision, then his/her Extra ADR Consideration shall revert to Defendants.

13

12.    **Payments to Class Members.**

12.1    Five (5) business days after the Effective Date, Defendants will transfer the Maximum Settlement Amount to the Administrator, which the Administrator will have placed in a segregated settlement account at a qualified United States bank and which Administrator will distribute solely as provided in this Agreement and as approved by the Court. Ten (10) business days after the Effective Date, the Administrator will mail to each Class Member who has not excluded himself/herself form the Settlement a non-payroll check made out to the each such individual and his/her Distributor Entity equaling his/her Individual Payment Amount, and if applicable, any Extra ADR Consideration.

12.2    The back of each settlement check will include the following language addressing the endorsee's waiver of his/her FLSA claims:  "This check is issued in full and final settlement of *Roxberry, et al. v. Snyder's-Lance, Inc., et al,* M.D. Penn., Case No. 1:16-cv-02009-JEJ ("Lawsuit").  By endorsing or negotiating this check, you release the claims set forth in the settlement notice, including but not limited to releasing Snyder's-Lance and all other Released Parties from all claims, known or unknown, made in the Lawsuit, as well as all claims, known or unknown, for wages, penalties, or otherwise, that relate to, are in connection with, or that arise under the Fair Labor Standards Act and any other local, state, or federal law that relates to or concerns wages or compensation that may have arisen through the Effective Date of the settlement."

12.3    If the Postal Service returns any check with a forwarding address, the Administrator will promptly re-mail the check to the forwarding address. If the Postal Service returns any check without a forwarding address, the Administrator will make all good faith and reasonable efforts to obtain the Class Member's current mailing address and will promptly re-

mail the check to any updated address. Checks that remain uncashed one hundred twenty (120) calendar days after the date of issuance will be null and void, and amounts associated with such uncashed checks shall revert to Defendants.

      **12.4**   Within 150 days after the mailing of settlement checks, after all checks have cleared or become stale, the Administrator shall provide a copy of the front and back of each individual settlement check that has been negotiated and a list of the dates on which each individual settlement check was negotiated to Defense Counsel.

      **12.5**   At the end of the applicable tax year, the Administrator will issue to each Class Member who has cashed or negotiated a settlement check an IRS Form 1099 or other applicable tax form reflecting his/her Individual Payment Amount, and if applicable, any Extra ADR Consideration.  Each Class Member is, and shall be, solely responsible for the payment of any and all federal, state and local taxes associated with his/her Individual Payment Amount and, if applicable, Extra ADR Consideration, and in no event shall Defendants be liable to withhold and/or pay such taxes.

    **13.**    **Service Awards.**

      **13.1**   Class Counsel will seek, and Defendants will not oppose, Court approval of a $19,000.00 Service Award payable from the Maximum Settlement Amount to each Originating Plaintiff who does not exclude himself/herself from the Settlement pursuant to Section 11 of this Agreement.  Within ten (10) business days after the Effective Date, the Administrator will mail to each such Originating Plaintiff a non-payroll check made out to each such individual and the Distributor Entity that he/she operated, owned, and/or worked for as joint payees, in the amount of the Originating Plaintiff's Court-approved Service Award.

       **13.2**   At the end of the applicable tax year, the Administrator will issue to each such Originating Plaintiff an IRS Form 1099 or other applicable tax form reflecting his/her receipt of the Service Award.  Each Originating Plaintiff is, and shall be, solely responsible for the payment of any and all federal, state and local taxes associated with the Service Award and in no event shall Defendants be liable to withhold and/or pay such taxes.

       **14.**    **Class Counsel's Fees and Expenses.** Class Counsel will seek, and Defendants will not oppose, Court approval of Class Counsel Fees and Class Counsel Expenses, including the Administrator's fees and expenses, to be paid from the Maximum Settlement Amount.  Class Counsel is, and shall be, solely responsible for the payment of any and all federal, state and local taxes associated with this fee/expense payment and in no event shall Defendants be liable to withhold and/or pay such taxes.  Within ten (10) business days after the Effective Date, the Administrator will disburse the Court-approved Class Counsel Fees and Class Counsel Expenses to Class Counsel.  At the end of the applicable tax year, the Administrator will issue to Class Counsel (and to the Originating Plaintiffs if required by law) an IRS Form 1099 or other applicable tax form reflecting the Class Counsel Fees and Class Counsel Expenses.  Class Counsel is, and shall be, solely responsible for the payment of any and all federal, state and local taxes associated with Class Counsel Fees and Class Counsel Expenses, and in no event shall Defendants be liable to withhold and/or pay such taxes.

       **15.**    **Court Approval of Service Awards, Class Counsel Fees, and Class Counsel Expenses.**  Except for those Class Members who object to the Settlement pursuant to Section 10, all Parties waive their right to appeal or seek other judicial review of any order that is materially consistent with the terms of this Agreement.  Moreover, the effectuation and binding nature of

this Agreement is not contingent on the Court awarding a specific amount of attorneys' fees, litigation expenses or Service Awards.

16. **Final Approval Motion/Order.**  At least seven (7) calendar days prior to the final fairness hearing scheduled by the Court, or on such other date as the Court may require, Class Counsel will file with the Court an unopposed motion, in a form agreeable to Defense Counsel, seeking entry of an order granting final approval of the Settlement and the requested Service Awards, attorney's fees, and expenses and dismissing the Action with prejudice and enter judgment to that effect.  Class Counsel shall provide a draft of the final approval motion to Defense Counsel at least three (3) business days before filing with the Court.

17. **Entire Agreement.** This Agreement and the attached exhibits constitute and embody the entire agreement between the Parties regarding the Settlement and supersede any and all prior communications regarding the Settlement.  In entering into the Settlement, no Party has relied on any representations not explicitly contained in this Agreement.

18. **Exhibits Incorporated by Reference.** The terms of this Agreement include the terms set forth in all attached exhibits, which are incorporated by this reference as though fully set forth herein.

19. **Successors.** The Settlement and this Agreement will inure to the benefit of and be binding upon the Parties' and their respective heirs, successors and assigns.

20. **No Admissions/Waiver.**

20.1    Nothing in this Agreement constitutes an admission or suggestion of liability by any Party. Defendants do not admit, and specifically deny, any and all allegations in the Complaint and any amended Complaint filed in this Action, and Defendants assert that Plaintiffs are not entitled to any relief on any of the claims alleged or that could have been

17

alleged in the Complaint or any amended Complaint. Defendants further specifically deny any and all wrongdoing and liability and continue to assert that, absent this Settlement, they ultimately would prevail in the Action and the Action is not suitable for class treatment. To this end, the Settlement, the negotiation and execution of this Agreement, all information discussed or exchanged as part of the Settlement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement and the Settlement are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of any Party or the truth of any of the factual or legal allegations in the Action; and are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omission on the part of any Party in any civil, criminal or administrative proceedings in any court, administrative agency, tribunal or otherwise.

**20.2** The Settlement and this Agreement do not, and shall not be deemed to, in any way, waive or release, nor do Defendants intend to waive or release, any rights which Defendants have under the Distributor Agreements, as amended.

**21.    Court Approval Not Obtained/Agreement Revoked.** If the Court does not approve the Settlement, an appellate court overturns the settlement in a final decision that is not subject to appeal, or the Agreement is revoked as provided herein, the Settlement and this Agreement shall be null and void and of no further effect, the Maximum Settlement Amount shall remain the property of Defendants, and the Parties' litigation positions will return to the *status quo ante* before execution of this Agreement with no waiver, in any way, of their claims or defenses in the Action. For example, although Defendants have agreed as part of the Settlement to certification of a settlement class as provided in this Agreement in order to effectuate the Settlement if it is approved by the Court, Defendants do not intend to, nor do they, waive their

objections to certification of a class in connection with the Action in the event that the Settlement is not approved by the Court or this Agreement and the Settlement are revoked pursuant to Sections 2 or 5 of this Agreement, and Defendants reserve any and all of their objections to class certification, along with all defenses Defendants may have to Plaintiffs' claims in the Action, if this Settlement is not approved by the Court, an appellate court overturns the Settlement in a final decision that is not subject to appeal, or if this Agreement is revoked by Defendants.

22. **Attorneys' Fees, Costs and Expenses.** Except as otherwise specifically provided for in this Agreement, each Party shall bear its own attorneys' fees, costs and expenses, taxable or otherwise, incurred by the Party in connection with the Action.

23. **Mutual Cooperation.**

23.1    The Parties and their counsel will support this Agreement against any legal challenge unless the Settlement is not finally approved by the Court or this Agreement is revoked by Defendants pursuant to Sections 2 or 5 of this Agreement.

23.2    The Parties, and their counsel, agree to cooperate with each other to accomplish the terms of this Agreement, including, but not limited to, the execution of all documents and the taking of such other actions as may reasonably be necessary to implement the terms of this Agreement. The Parties, and their counsel, shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may be necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after the execution of this Agreement, the Parties and their counsel shall take all necessary steps to secure the Court's preliminary and final approval of the Settlement.

24. **The Settlement is Fair, Adequate, and Reasonable.** The Parties believe, represent, and assert that this Agreement is a fair, adequate, and reasonable settlement of the

Action and have arrived at this Agreement after arm's-length negotiations, and in the context of adversarial litigation, taking into account all relevant factors, present and potential.

25. **Warranty of Authority.** Each signatory to this Agreement hereby affirmatively warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party or Parties that he/she represents.

26. **Evidentiary Privilege.** This Agreement and all associated negotiations are covered by, and subject to, Federal Rule of Evidence 408 and all comparable state and federal rules of evidence.

27. **Confidentiality/Disclosure.**

27.1   The Parties agree that, to the extent legally possible, this Agreement and the Settlement shall be treated as confidential and shall not be disclosed to any non-parties without the prior, express written approval of Class Counsel and Defense Counsel; provided, however, that information about the Settlement may be disclosed to the Court in connection with proceedings seeking approval of the Settlement, and the Parties may disclose this Agreement and information about the Settlement to their respective attorneys and tax and financial advisors.  To the extent the existence of terms of the Settlement must be disclosed to the Parties' respective attorneys and tax and financial advisors, the Parties and their counsel will make reasonable efforts to advise the person(s) that will be receiving the disclosure of the need to keep the information confidential, and advise them of this confidentiality provision.

27.2   Originating Plaintiffs agree to keep the information shared at the mediation confidential.

27.3   Class Counsel and the Originating Plaintiffs agree that they will take no action (other than as expressly permitted herein), directly or indirectly, to disclose or publish or

reveal any information about the Settlement, including but not limited to issuing any individual press release(s), holding a press conference or commenting on the Action in any public forum or communications, or posting any information about the Settlement on a website.   The Notice to the Opt-In Plaintiffs will further require as a condition of participating in the Settlement that the Opt-In Plaintiff agrees that he/she will take no action, directly or indirectly, to disclose or publish or reveal any information about the Settlement, including but not limited to issuing any press release(s), holding a press conference or commenting on the Action in any public forum or communications, or posting any information about the Settlement on a website.

   **27.4** Class Counsel agree that, except as otherwise required by law, they will not respond to any inquiries regarding the Settlement or the Agreement from anyone other than Class Members or the Court, except to state that the matter has been resolved.

   **27.5** Notwithstanding the above, Class Counsel may make reports or disclosures regarding the Settlement or this Agreement as may be required by law and to their respective accountants.

   **28.** **<u>Applicable Law.</u>** This Agreement shall be governed by and construed in accordance with Pennsylvania law, not including its laws relating to conflicts and choice of laws.

   **29.** **<u>Jurisdiction of the Court.</u>** Any claim or dispute arising out of or relating to this Agreement, or the Settlement, will be resolved solely and exclusively by the Court, and the Parties hereby consent to the personal jurisdiction of the Court over them solely in connection therewith.

   **30.** **<u>Waiver of Certain Appeals.</u>** All Class Members who do not object to the Settlement pursuant to Section 10 waive all appeals of the approval of the Settlement and this Agreement.

**31.**    **Amendment or Modification.** This Agreement may not be amended or modified except by a written agreement signed by counsel of all Parties and approved by the Court.

**32.**    **Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

[REMAINDER OF PAGE IS INTENTIONALLY BLANK]

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement as of the date set forth below:

Dated: August **17**, 2017

_____

MICHAEL ROXBERRY

Dated: August _____, 2017

_____

MICHELLE ROXBERRY

Dated: August **17**, 2017

_____

RANDY PERDUE

Dated: August _____, 2017

_____

BRITT MANNING

Dated: August _____, 2017

_____

TOM GRUTSCH

Dated: August _____, 2017

_____

THOMAS LEE SMAWLEY

Dated: August _____, 2017

_____

BOB JOHNSON

Dated: August _____, 2017

_____

RENAE RIDDLE

Dated: August _____, 2017

_____

MAKENZIE SNYDER

23

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement as of the date set forth below:

Dated: August \_\_\_\_, 2017

_____
MICHAEL ROXBERRY

Dated: August *17*, 2017

*Michelle Roxberry*
_____
MICHELLE ROXBERRY

Dated: August \_\_\_\_, 2017

_____
RANDY PERDUE

Dated: August \_\_\_\_, 2017

_____
BRITT MANNING

Dated: August \_\_\_\_, 2017

_____
TOM GRUTSCH

Dated: August \_\_\_\_, 2017

_____
THOMAS LEE SMAWLEY

Dated: August \_\_\_\_, 2017

_____
BOB JOHNSON

Dated: August \_\_\_\_, 2017

_____
RENAE RIDDLE

Dated: August \_\_\_\_, 2017

_____
MAKENZIE SNYDER

23

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement as of the date set forth below:

Dated: August _____, 2017

_____
MICHAEL ROXBERRY

Dated: August _____, 2017

_____
MICHELLE ROXBERRY

Dated: August _____, 2017

_____
RANDY PERDUE

Dated: August  11 , 2017

_____
BRITT MANNING

Dated: August _____, 2017

_____
TOM GRUTSCH

Dated: August _____, 2017

_____
THOMAS LEE SMAWLEY

Dated: August _____, 2017

_____
BOB JOHNSON

Dated: August _____, 2017

_____
RENAE RIDDLE

Dated: August _____, 2017

_____
MAKENZIE SNYDER

23

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement as of the date set forth below:

Dated: August _____, 2017

_____
MICHAEL ROXBERRY

Dated: August _____, 2017

_____
MICHELLE ROXBERRY

Dated: August _____, 2017

_____
RANDY PERDUE

Dated: August _____, 2017

_____
BRITT MANNING

Dated: August _11_, 2017

_____
TOM GRUTSCH

Dated: August _____, 2017

_____
THOMAS LEE SMAWLEY

Dated: August _____, 2017

_____
BOB JOHNSON

Dated: August _____, 2017

_____
RENAE RIDDLE

Dated: August _____, 2017

_____
MAKENZIE SNYDER

23

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement as of the date set forth below:

Dated: August _____, 2017

_____
MICHAEL ROXBERRY

Dated: August _____, 2017

_____
MICHELLE ROXBERRY

Dated: August _____, 2017

_____
RANDY PERDUE

Dated: August _____, 2017

_____
BRITT MANNING

Dated: August _____, 2017

_____
TOM GRUTSCH

Dated: August _14_, 2017

_____
THOMAS LEE SMAWLEY

Dated: August _____, 2017

_____
BOB JOHNSON

Dated: August _____, 2017

_____
RENAE RIDDLE

Dated: August _____, 2017

_____
MAKENZIE SNYDER

23

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement as of the date set forth below:

Dated: August _____, 2017                     _____
                                              MICHAEL ROXBERRY


Dated: August _____, 2017                     _____
                                              MICHELLE ROXBERRY


Dated: August _____, 2017                     _____
                                              RANDY PERDUE


Dated: August _____, 2017                     _____
                                              BRITT MANNING


Dated: August _____, 2017                     _____
                                              TOM GRUTSCH


Dated: August _____, 2017                     _____
                                              THOMAS LEE SMAWLEY


Dated: August _10_, 2017                      _____
                                              BOB JOHNSON


Dated: August _____, 2017                     _____
                                              RENAE RIDDLE


Dated: August _____, 2017                     _____
                                              MAKENZIE SNYDER

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement as of the date set forth below:

Dated: August _____, 2017

_____
MICHAEL ROXBERRY

Dated: August _____, 2017

_____
MICHELLE ROXBERRY

Dated: August _____, 2017

_____
RANDY PERDUE

Dated: August _____, 2017

_____
BRITT MANNING

Dated: August _____, 2017

_____
TOM GRUTSCH

Dated: August _____, 2017

_____
THOMAS LEE SMAWLEY

Dated: August _____, 2017

_____
BOB JOHNSON

Dated: August _11_, 2017

_____
RENAE RIDDLE

Dated: August _____, 2017

_____
MAKENZIE SNYDER

23

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement as of the date set forth below:

Dated: August _____, 2017

_____
MICHAEL ROXBERRY

Dated: August _____, 2017

_____
MICHELLE ROXBERRY

Dated: August _____, 2017

_____
RANDY PERDUE

Dated: August _____, 2017

_____
BRITT MANNING

Dated: August _____, 2017

_____
TOM GRUTSCH

Dated: August _____, 2017

_____
THOMAS LEE SMAWLEY

Dated: August _____, 2017

_____
BOB JOHNSON

Dated: August _____, 2017

_____
RENAE RIDDLE

Dated: August 15, 2017

_____
MAKENZIE SNYDER

23

Dated:  August ⎪⎪2017              By: _____
                                        J. Keith Coates
                                        J. Chadwick Hatmaker
                                        WOOLF, MCCLANE, BRIGHT, ALLEN
                                        & CARPENTER, PLLC

                                        Counsel for Plaintiffs

Dated:  August 9, 2017             By: _____
                                        Peter D. Winebrake
                                        Mark J. Gottesfeld
                                        WINEBRAKE & SANTILLO, LLC

                                        Counsel for Plaintiffs

Dated:  August 14, 2017            By: _____
                                        Name:
                                        Title:
                                        SNYDER'S-LANCE, INC., S-L ROUTES,
                                        LLC, and S-L DISTRIBUTION
                                        COMPANY, INC.

                                        Defendants

Dated:  August 25 2017             By: _____
                                        Joan B. Tucker Fife
                                        Cardelle B. Spangler
                                        WINSTON & STRAWN LLP

                                        Counsel for Defendants

24

## ADDENDUM TO CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

Originating Plaintiffs and Defendants have entered into the Confidential Settlement Agreement and Release ("Agreement") and also enter into this Addendum to the Agreement ("Addendum") as follows:

The following language shall be added at the end of Section 6.1 of the Agreement:

"The parties acknowledge and agree that for a Class Member who has either (a) entered into an agreement to sell his route(s) to Defendants and the sale has not closed prior to the Final Approval of the Settlement Agreement, or (b) whose route(s) has terminated (voluntarily or involuntarily) but the sale of the route(s) has not closed prior to the Final Approval of the Settlement Agreement, the Released Claims shall not include a breach of contract claim for any payments that Class Member may be entitled to for the sale of such route(s)."

Except as modified above, or by future written agreement executed by the parties, the remaining provisions of the Agreement remain in full force and effect. By signing below, counsel for the parties agree that the Parties agree to the Addendum and its terms.

Dated: August 25, 2017    By: _____
J. Keith Coates
J. Chadwick Hatmaker
WOOLF, MCCLANE, BRIGHT, ALLEN
& CARPENTER, PLLC
Counsel for Plaintiffs

Dated: August 25, 2017    By: _____
Peter D. Winebrake
Mark J. Gottesfeld
WINEBRAKE & SANTILLO, LLC
Counsel for Plaintiffs

Dated: August 25, 2017    By: _____
Joan B. Tucker Fife
Cardelle B. Spangler
WINSTON & STRAWN LLP
Counsel for Defendants

**Roxberry, et al. v. Snyder's-Lance, Inc., et al. - EXHIBIT A**

| | Opt-In (Yes/No) | Class Member Category | Distributor Entity | Individual Class Member | Eligible For Extra ADR Consideration (Yes/No) |
|---|---|---|---|---|---|
| 1. | Yes | Current Non-ADR Contractor | JOHN C ABELS LLC | ABELS, JOHN | Yes |
| 2. | Yes | Current Non-ADR Contractor | RON ANDERSON LLC | ANDERSON, RONALD E. (#802467) | Yes |
| 3. | Yes | Former Contractor | RON ANDERSON LLC | ANDERSON, RONALD E. (#806341) | No |
| 4. | Yes | Current Non-ADR Contractor | SDA DISTRIBUTING, LLC | AUSEC, DANIEL WILLIAM | Yes |
| 5. | Yes | Current Non-ADR Contractor | P BALDINELLI LLC | BALDINELLI, PAUL | Yes |
| 6. | Yes | Former Contractor | MAK DISTRIBUTORS LLC | BARBALACE, JR., ANTHONY | No |
| 7. | Yes | Current Non-ADR Contractor | MARWIN LAMONT BONNER | BONNER, MARWIN | Yes |
| 8. | Yes | Current Non-ADR Contractor | BUCH DISTRIBUTION LLC | BUCHEWICZ, DAVID | Yes |
| 9. | Yes | Current ADR Contractor | MIKE BUSCHBELL ENTERPRISES LLC | BUSCHBELL, MIKE | No |
| 10. | Yes | Current Non-ADR Contractor | BOB CAMPBELL | CAMPBELL, BOB | Yes |
| 11. | Yes | Current ADR Contractor | CARSON SNACK SALES LLC | CARSON, JESSE | No |
| 12. | Yes | Current Non-ADR Contractor | CHELTON DISTRIBUTING INC. | CHELTON, SHAWN | Yes |
| 13. | Yes | Current Non-ADR Contractor | CCLARE INC. | CLARE, CHRIS | Yes |
| 14. | Yes | Former Contractor | CONLEY DISTRIBUTION LLC | CONLEY, DARRELL | No |
| 15. | Yes | Former Contractor | HONDOCORP LLC | COOPER, THOMAS A. | No |
| 16. | Yes | Former Contractor | COPES ALL AMERICAN DISTRIBUTION LLC | COPE, ROBERT W. | No |
| 17. | Yes | Current Non-ADR Contractor | MSC DISTRIBUTION LLC | CURSIO, MATTHEW | Yes |
| 18. | Yes | Current Non-ADR Contractor | MICGHASCOTTS SNACKS LLC | DANIEL, GREGORY (#801389) | Yes |
| 19. | Yes | Current ADR Contractor | GS SNACKS LLC | DANIEL, GREGORY (#801391) | No |
| 20. | Yes | Current Non-ADR Contractor | DAVID DOBSON | DOBSON, DAVID | Yes |
| 21. | Yes | Current Non-ADR Contractor | MKM LOGISTICS LLC | EINLOTH, MATTHEW | Yes |
| 22. | Yes | Former Contractor | FRANCISCA R. ELLIS | ELLIS, FRANCISCA | No |
| 23. | Yes | Former Contractor | LEROY ELLIS DISTRIBUTOR, LLC | ELLIS, LEROY | No |
| 24. | Yes | Former Contractor | GAMEDAY IN THE SOUTH MERCHANDISING, LLC | EMBRICK, MARK (#806020) | No |
| 25. | Yes | Former Contractor | GAMEDAY IN THE SOUTH MERCHANDISING, LLC | EMBRICK,MARK (#808521) | No |
| 26. | Yes | Current Non-ADR Contractor | RJ FABUS DISTRIBUTING INC. | FABUS, ROBERT JR. | Yes |
| 27. | Yes | Former Contractor | D.E. FAHRNER, LLC | FAHRNER, JR., DELBERT | No |
| 28. | Yes | Current Non-ADR Contractor | M&V DISTRIBUTING INC. | FALCONE, MATTHEW | Yes |
| 29. | Yes | Current Non-ADR Contractor | MM DISTRIBUTORS, LLC | GOLDEN, MICHELLE | Yes |
| 30. | Yes | Former Contractor | TKC SNACKS LLC | GRIFFIN, KEITH | No |
| 31. | Yes | Former Contractor | SNACKS 2 U MARKETING LLC | GRUTSCH, TOM | No |
| 32. | Yes | Former Contractor | HUYHN DISTRIBUTION LLC | HUYNH, BINH | No |
| 33. | Yes | Former Contractor | STEVE ISELIN LLC | ISELIN, STEVE | No |
| 34. | Yes | Former Contractor | JEFFREY DISTRIBUTING LLC | JEFFREY, TIM | No |
| 35. | Yes | Former Contractor | BOMAR DISTRIBUTION INC. | JOHNSON, ROBERT | No |
| 36. | Yes | Current Non-ADR Contractor | DEDDYS GIRL LLC | JONES, HEATHER | Yes |
| 37. | Yes | Former Contractor | DENNIS PATRICK KEYS JR | KEYS, DENNIS JR. | No |
| 38. | Yes | Current Non-ADR Contractor | GREGORY SCOTT KING | KING, GREGORY | Yes |
| 39. | Yes | Current Non-ADR Contractor | S KIRASIC LLC | KIRASIC, SCOTT | Yes |
| 40. | Yes | Current Non-ADR Contractor | BUZUC SNACKS LLC | LAWRENCE, CARL | Yes |
| 41. | Yes | Current Non-ADR Contractor | DARJON DISTRIBUTING LLC | LEMESH, DARRELL | Yes |
| 42. | Yes | Current ADR Contractor | MICHMARC LLC | LEVINE, MARC | No |
| 43. | Yes | Former Contractor | EL ENTERPRISE LLC | LINSENBIGLER, EDWARD | No |
| 44. | Yes | Current Non-ADR Contractor | R&L DISTRIBUTING LLC | LINSENBIGLER, RICHARD | Yes |
| 45. | Yes | Current ADR Contractor | JAMES P. MALONEY DISTRIBUTORS LLC | MALONEY, JAMES P. | No |
| 46. | Yes | Former Contractor | B & A DISTRIBUTING LLC | MANNING, BRITT | No |
| 47. | Yes | Former Contractor | HAMMER HEAD DISTRIBUTION LLC | MARQUARD, RICHARD | No |
| 48. | Yes | Former Contractor | MARTIN SNACKS DISTRIBUTING LLC | MARTIN, CAREY | No |
| 49. | Yes | Current Non-ADR Contractor | CT DISTRIBUTING LLC | MARTIN, JAMES | Yes |
| 50. | Yes | Former Contractor | RPM ENTERPRISES INC. | MAY, ROBERT | No |
| 51. | Yes | Former Contractor | JM DISTRIBUTING LLC | MCALISTAR, JEFF (#802080) | No |
| 52. | Yes | Former Contractor | JM DISTRIBUTING LLC | MCALISTAR, JEFF (#806019) | No |
| 53. | Yes | Former Contractor | MAW ASSOCIATES, LP | MIGLIORE, DAVID | No |
| 54. | Yes | Current Non-ADR Contractor | SOH DISTRIBUTION COMPANY, LLC | MIGLIORE, MICHAEL | Yes |
| 55. | Yes | Current Non-ADR Contractor | BENEDICT JOSEPH MINE | MINE, BENEDICT | Yes |
| 56. | Yes | Current Non-ADR Contractor | D'MO DISTRIBUTING LLC | MOORE, STEVEN D. | Yes |
| 57. | Yes | Former Contractor | WAYNE MORGAN DISTRIBUTING, LLC | MORGAN, HENRY W. | No |
| 58. | Yes | Current ADR Contractor | KWM ENTERPRISES, LLC | MORGAN, JASON | No |
| 59. | Yes | Current Non-ADR Contractor | MORRIS DISTRIBUTORS LLC | MORRIS, CASEY | Yes |
| 60. | Yes | Current Non-ADR Contractor | NAGLEY ENTERPRISES LLC | NAGLEY, NORMAN | Yes |
| 61. | Yes | Current Non-ADR Contractor | CMN DISTRIBUTOR INC | NEWLAND, CHRISTOPHER | Yes |
| 62. | Yes | Current Non-ADR Contractor | ADAM A. OLWEEAN | OLWEEAN, ADAM | Yes |
| 63. | Yes | Current Non-ADR Contractor | PAXSON DISTRIBUTING INC. | PAXSON, JAMES | Yes |
| 64. | Yes | Current Non-ADR Contractor | R. PERDUE ENTERPRISES INC. | PERDUE, RANDALL | Yes |

| | Opt-In (Yes/No) | Class Member Category | Distributor Entity | Individual Class Member | Eligible For Extra ADR Consideration (Yes/No) |
|---|---|---|---|---|---|
| 65. | Yes | Former Contractor | JPL DISTRIBUTING LLC | PETERMAN, PHILIP | No |
| 66. | Yes | Current Non-ADR Contractor | DAVID PFAFF | PFAFF, DAVID | Yes |
| 67. | Yes | Former Contractor | KEP CRUNCH LLC | PFEIFFER, KURT | No |
| 68. | Yes | Current Non-ADR Contractor | T P SNACKS LLC | PHILLIPS, TIMOTHY | Yes |
| 69. | Yes | Current Non-ADR Contractor | GREGORY PIERCE | PIERCE, GREGORY | Yes |
| 70. | Yes | Current Non-ADR Contractor | SIERRA R&D, LLC | POOLE, RONNIE L. | Yes |
| 71. | Yes | Current Non-ADR Contractor | DNF SNACKS LLC | RAMSEY, DANIEL | Yes |
| 72. | Yes | Current Non-ADR Contractor | WILLIAM FRANKLIN RENDON | RENDON, WILLIAM | Yes |
| 73. | Yes | Current Non-ADR Contractor | REYNOLDS DISTRIBUTION SERVICES LLC | REYNOLDS, BRANDON | Yes |
| 74. | Yes | Former Contractor | S & R VENDING LLC | RIDDLE, RENAE | No |
| 75. | Yes | Current Non-ADR Contractor | STACKS OF SNACKS LLC; STACKS OF SNACKS 2 LLC | ROXBERRY, MICHELLE | Yes |
| 76. | Yes | Current Non-ADR Contractor | WHITLOCK VENDING LLC; SILVERFOX DISTRIBUTION, LLC | ROXBERRY, MIKE | Yes |
| 77. | Yes | Former Contractor | TIMS TASTY TREATS LLC | ROXBERRY, TIMOTHY | No |
| 78. | Yes | Former Contractor | G&R DISTRIBUTING LLC | SABIDO, ISABELLA | No |
| 79. | Yes | Current Non-ADR Contractor | SALMON DISTRIBUTING LLC | SALMON, JAMES | Yes |
| 80. | Yes | Current Non-ADR Contractor | MCJ DISTRIBUTORS LLC | SANCHEZ, JERONIMO | Yes |
| 81. | Yes | Former Contractor | BEARDLESS REDBEET DELIVERIES, LLC | SEIBERT, GREGORY | No |
| 82. | Yes | Current Non-ADR Contractor | RICHARD L SHALHOUB | SHALHOUB, RICHARD | Yes |
| 83. | Yes | Former Contractor | LEE SMAWLEY ENTERPRISE LLC | SMAWLEY, THOMAS | No |
| 84. | Yes | Current Non-ADR Contractor | E Z E SNACK DISTRIBUTION LLC | SMITH, ERIC CLIFTON | Yes |
| 85. | Yes | Former Contractor | JEFFROSSSNAX LLC | SMITH, JEFFREY | No |
| 86. | Yes | Current Non-ADR Contractor | BARS DISTRIBUTION LLC | SMITH, SHAWN | Yes |
| 87. | Yes | Current Non-ADR Contractor | AMOS SNACK DISTRIBUTING LLC | SNOW, SANDRA AMOS | Yes |
| 88. | Yes | Former Contractor | M&A VENDING LLC | SNYDER, MAKENZIE | No |
| 89. | Yes | Current Non-ADR Contractor | S&M SNACKS, LLC | STEWART, DAVID LEE | Yes |
| 90. | Yes | Current ADR Contractor | HEAVENLY LIGHTHOUSE LLC | STEWART, SARAH | No |
| 91. | Yes | Current Non-ADR Contractor | STRAUGHN DISTRIBUTING LLC | STRAUGHN, JESSE A. | Yes |
| 92. | Yes | Current Non-ADR Contractor | TJ SNACKS INC | SZUCHMANSKI, THOMAS | Yes |
| 93. | Yes | Former Contractor | ROBECO LLC | THOMPSON, GINA | No |
| 94. | Yes | Current Non-ADR Contractor | PRETZEL 1 LLC | TIERNO, MARK | Yes |
| 95. | Yes | Current Non-ADR Contractor | TUT'S DISTRIBUTING LLC | TUTTLE, MONTY | Yes |
| 96. | Yes | Current Non-ADR Contractor | SCOTTY D'S SNACKS LLC | URQUHART, SCOTT | Yes |
| 97. | Yes | Current Non-ADR Contractor | RAYLENE DISTRIBUTING LLC | URQUIDES, REINALDO | Yes |
| 98. | Yes | Current Non-ADR Contractor | AV DISTRIBUTION, LLC | VACCA, ANTONIO | Yes |
| 99. | Yes | Current Non-ADR Contractor | NEIL WALDE DISTRIBUTING LLC | WALDE, NEIL | Yes |
| 100. | Yes | Current Non-ADR Contractor | NOSH FOODS LLC | WARREN, GARY | Yes |
| 101. | Yes | Former Contractor | JPW SNACKS, LLC | WHEELER, JOHN | No |
| 102. | Yes | Current Non-ADR Contractor | MAR MOR VENTURES INC | ZIMMERMAN, MARK | Yes |
| 103. | No | Current ADR Contractor | ADAMS BREAD LLC | ADAMS, BRANDON L | No |
| 104. | No | Former Contractor | LIVE ALOHA LLC | APPLEGATE, TONI KAY | No |
| 105. | No | Current Non-ADR Contractor | B&P DISTRIBUTING INC | BACON, PAUL G | Yes |
| 106. | No | Former Contractor | ELDON J BALDWIN | BALDWIN, ELDON J. | No |
| 107. | No | Current ADR Contractor | JB DISTRIBUTORS LLC | BARNETT, JANNA | No |
| 108. | No | Former Contractor | KB DISTRIBUTING LLC | BARTLEY, DAVID A | No |
| 109. | No | Former Contractor | BARTLEY ENTERPRISES INC | BARTLEY, KIMBERLY DAWN | No |
| 110. | No | Current Non-ADR Contractor | RPB DISTRIBUTING, LLC | BEENE, RANDY PRICE | Yes |
| 111. | No | Current ADR Contractor | BENEDUM DELIVERIES LLC | BENDEDUM, II, LESLIE MICHAEL | No |
| 112. | No | Former Contractor | BENNETT DISTRIBUTION LLC | BENNETT, JOSHUA STEPHEN | No |
| 113. | No | Former Contractor | TGTBTPRETZELS LLC | BENNETT, TIFFANY ANN | No |
| 114. | No | Former Contractor | BIG ORANGE SNACKS LLC | BIG, KRIS ALAN | No |
| 115. | No | Current Non-ADR Contractor | CWB DISTRIBUTION LLC | BODDIE, CANAAN W | Yes |
| 116. | No | Former Contractor | JAMES BOGGS DISTRIBUTION INC | BOGGS, JAMES R. | No |
| 117. | No | Former Contractor | REB DISTRIBUTION INC | BOWYER, II, ROBERT E. | No |
| 118. | No | Former Contractor | R BRAG LLC | BRAGDON, ROBERT WILLIAM FOSHIE | No |
| 119. | No | Current ADR Contractor | C&J SNACKS LLC | BRAWER, JUSTIN MICHAEL | No |
| 120. | No | Former Contractor | AUBREE'S SNACKS LLC | BROWN, JR., BILLY E. | No |
| 121. | No | Current Non-ADR Contractor | BRUMMETT DISTRIBUTING LLC | BRUMMETT JR, DANNY OVERTON | Yes |
| 122. | No | Former Contractor | MATT CALDWELL ENTERPRISE LLC | CALDWELL, MATTHEW BRANDON | No |
| 123. | No | Former Contractor | BRENDA GAIL CALLIS | CALLIS, BRENDA GAIL. | No |
| 124. | No | Current Non-ADR Contractor | CASH FAMILY DISTRIBUTION INC | CASH, GREGORY W | Yes |
| 125. | No | Former Contractor | PLUM BROKE LLC | CHRISTOPHER, RYAN; SCHLEIGH, RON | No |
| 126. | No | Former Contractor | AMST DISTRIBUTION INC | CHUNCHUKOV, ALEKSANDRS | No |
| 127. | No | Current Non-ADR Contractor | MEC DISTRIBUTING LLC | CLEVENDER, MICHAEL E | Yes |
| 128. | No | Current Non-ADR Contractor | COOKS CRACKERS LLC | COOK, JEREMY MICHAEL | Yes |
| 129. | No | Former Contractor | DAVID L. DONALDSON | DONALDSON, DAVID L. | No |

| | Opt-In (Yes/No) | Class Member Category | Distributor Entity | Individual Class Member | Eligible For Extra ADR Consideration (Yes/No) |
|---|---|---|---|---|---|
| 130. | No | Former Contractor | ABLE CONTRACTING LLC | DOTSON, II, CLYDE H. | No |
| 131. | No | Former Contractor | MOOSE SNACKS LLC | DOYLE, NATHAN T. | No |
| 132. | No | Current Non-ADR Contractor | JSE DISTRIBUTION COMPANY LLC | EDWARDS, JAMES S. | Yes |
| 133. | No | Former Contractor | G & G DISTRIBUTION LLC | EPPERSON, GEORGE RICHARD | No |
| 134. | No | Current Non-ADR Contractor | BELLA BROOK LLC | FORESTER II, FLOYD LESLIE | Yes |
| 135. | No | Current ADR Contractor | OHANA DISTRIBUTION LLC | GAFFORD, ADAM LEWIS | No |
| 136. | No | Former Contractor | GAFFORD DIST LLC | GAFFORD, ADAM LEWIS | No |
| 137. | No | Former Contractor | SHAKA DISTRIBUTION LLC | GAFFORD, TONI KAY (#806087) | No |
| 138. | No | Current Non-ADR Contractor | LIVE ALOHA LLC | GAFFORD, TONI KAY (#806088) | Yes |
| 139. | No | Former Contractor | G & S DISTRIBUTING LLC | GARRETSON, WESTLEY D | No |
| 140. | No | Former Contractor | YANKEE CHIPPER INC | GOKEY, JAMES P. | No |
| 141. | No | Former Contractor | LL DISTRIBUTING LLC | GOUGE, CHRISTOPHER SCOTT | No |
| 142. | No | Former Contractor | HIGHLANDS DISTRIBUTION INC | GOUNARIS, DIMITRIOS MICHAEL | No |
| 143. | No | Former Contractor | DG SNACKS LLC | GREENWAY, DEBORAH LYNN | No |
| 144. | No | Former Contractor | BRAD HENDERSON DISTRIBUTION INC | HENDERSON III, JOHN BRADFORD | No |
| 145. | No | Current Non-ADR Contractor | HAPPY SNACKS LLC | HILL, SEAN E. | Yes |
| 146. | No | Current Non-ADR Contractor | KENTEX DISTRIBUTORS LLC | HOLLAND, MARTY JAMES | Yes |
| 147. | No | Former Contractor | JOHN DWIGHT HOLLANDSWORTH | HOLLANDSWORTH, JOHN DWIGHT | No |
| 148. | No | Current Non-ADR Contractor | HOLMES FAMILY DISTRIBUTING INC | HOLMES, JOSEPH | Yes |
| 149. | No | Former Contractor | SALTY CRACKER DISTRIBUTION LLC | HOLT, EARL E (#806099) | No |
| 150. | No | Former Contractor | SALTY CRACKER LLC | HOLT, EARL E (#806100) | Yes |
| 151. | No | Former Contractor | BEMZ MC CRACKERS INC | HUFFINE, BARBARA J. | No |
| 152. | No | Current Non-ADR Contractor | JONES 4 LLC | JONES, JOSHUA ANDREW | Yes |
| 153. | No | Current Non-ADR Contractor | TDJ DISTRIBUTION LLC | JUSTICE, TIFFANY DAWN | Yes |
| 154. | No | Former Contractor | KD DISTRIBUTING LLC | KD, KYLE BRYAN | No |
| 155. | No | Former Contractor | KINCAID 1 LLC | KINCAID, EUGENE ALLEN | No |
| 156. | No | Current Non-ADR Contractor | MID-TENN SNACKS LLC | KNIGHT, JON MICHAEL | Yes |
| 157. | No | Former Contractor | JULIO CESAR LAGOS | LAGOS, JULIO CESAR | No |
| 158. | No | Current ADR Contractor | DAVID LEDFORD DISTRIBUTION LLC | LEDFORD, DAVID | No |
| 159. | No | Current Non-ADR Contractor | PREMIER DISTRIBUTION LLC | LEONARD, MICHAEL R | Yes |
| 160. | No | Current Non-ADR Contractor | C T DISTRIBUTING LLC | MARTIN, JAMES | Yes |
| 161. | No | Current Non-ADR Contractor | ELI S LLC | MAYES, RHONDA PATREASE | Yes |
| 162. | No | Current Non-ADR Contractor | RM DISTRIBUTING LLC | MCCALL, RANDALL | Yes |
| 163. | No | Current Non-ADR Contractor | DMD DISTRIBUTING LLC | MCDONALD, MATTHEW ADAM | Yes |
| 164. | No | Former Contractor | ACDM DISTRIBUTING INC | MILLER, DARREN | No |
| 165. | No | Current Non-ADR Contractor | BIG DONKEY TRADING LLC | MILLER, GREGORY FRANKLIN | Yes |
| 166. | No | Former Contractor | DALE MOLES DISTRIBUTING LLC | MOLES, ROBERT DALE | No |
| 167. | No | Current Non-ADR Contractor | MOLES SNACKS LLC | MOLES, STEPHEN W. | Yes |
| 168. | No | Former Contractor | MATT CALDWELL DISTRIBUTING LLC | MUNJAL, NATALIA SHANTI | No |
| 169. | No | Former Contractor | MUSICK SNACK FOOD LLC | MUSICK, LARRY DAVID | No |
| 170. | No | Former Contractor | JUS SNACKS LLC | ODUM, JUSTIN M. | No |
| 171. | No | Former Contractor | NICOLE RAE ODUM | ODUM, NICOLE RAE | No |
| 172. | No | Current ADR Contractor | ONEAL DISTRIBUTING LLC | ONEAL, ROBERT LEE (#806163) | No |
| 173. | No | Former Contractor | ONEAL DISTRIBUTING LLC | ONEAL, ROBERT LEE (#806172) | No |
| 174. | No | Former Contractor | SJQ PEARSON LLC | PEARSON, STEVEN | No |
| 175. | No | Current Non-ADR Contractor | ROCKY KNOB VENDING LLC | PROFFITT, GREGORY T | Yes |
| 176. | No | Former Contractor | REPASS SNACKS DISTRIBUTING LLC | REPASS, EDWARD R. | No |
| 177. | No | Current Non-ADR Contractor | GR ENTERPRISES LLC | ROBBINS, GARY | Yes |
| 178. | No | Current ADR Contractor | JORDAN SCHALK DISTRIBUTORS LLC | SCHALK, JORDAN CRAVEN | No |
| 179. | No | Former Contractor | K & R DISTRIBUTING LLC | SCHLEIGH, RONALD W. | No |
| 180. | No | Former Contractor | SCUDDERS DISTRIBUTION LLC | SCUDDER, MATTHEW EARL | No |
| 181. | No | Former Contractor | PAIDEIA DISTRIBUTION LLC | SHELF, JUSTIN L. | No |
| 182. | No | Current Non-ADR Contractor | RICK SIMPSON DISTRIBUTING LLC | SIMPSON, RICK | Yes |
| 183. | No | Current Non-ADR Contractor | T&S DISTRIBUTOR LLC | SIMS JR, THOMAS M. | Yes |
| 184. | No | Current ADR Contractor | SMALLEY&YOUNG LLC | SMALLEY, NICHOLAS DONALD | No |
| 185. | No | Former Contractor | ADAM SPENCE SMITH LLC | SMITH, ADAM SPENCE | No |
| 186. | No | Former Contractor | RICHNDYS SNACKS JR INC | SMITH, NATASHA DAWN | No |
| 187. | No | Former Contractor | RICHNDYS SNACKS INC | SMITH, WENDY D | No |
| 188. | No | Former Contractor | SNACK ATTACK SALES LLC | SNACK, SCOTTY RAY | No |
| 189. | No | Former Contractor | SPENCE SMITH DISTRIBUTION LLC | SPENCE, ADAM SPENCE | No |
| 190. | No | Former Contractor | JONATHAN P SUMNEY | SUMNEY, JONATHAN P. | No |
| 191. | No | Former Contractor | SWARNER DISTRIBUTING LLC | SWARNER, STEPHEN EARL | No |
| 192. | No | Current Non-ADR Contractor | R&S SNACKS INC | SWARTZ, RICHARD EUGEN | Yes |
| 193. | No | Former Contractor | T & T SNACK FOODS INC | TABOR, MARK ANTHONY | No |
| 194. | No | Current ADR Contractor | T FAMILY VENTURES LLC | TEPNER, MARC A | No |
| 195. | No | Current ADR Contractor | FRANKLIN DISTRIBUTION COMPANY INC | WARREN, KATIE A. | No |
| 196. | No | Former Contractor | ROBERT J WHALEY | WHALEY, ROBERT J. | No |

| | Opt-In (Yes/No) | Class Member Category | Distributor Entity | Individual Class Member | Eligible For Extra ADR Consideration (Yes/No) |
|---|---|---|---|---|---|
| 197. | No | Former Contractor | JPW SNACKS LLC | WHEELER, JOHN W. | No |
| 198. | No | Former Contractor | WOLFES DISTRIBUTION INC | WOLFE, BILLY HAROLD | No |

# Exhibit B

<u>**NOTICE OF CONFIDENTIAL COLLECTIVE AND CLASS ACTION SETTLEMENT**</u>
*Roxberry, et al. v. Snyder's-Lance, Inc., et al.*
*United States District Court for the Middle District of Pennsylvania*
*Case No. 1:16-cv-02009-JEJ*

<u>***TO:***</u> *[INSERT CLASS MEMBER NAME]*

The United States District Court for the Middle District of Pennsylvania ("the Court") has authorized this Notice, which summarizes the settlement of this purported collective and class action lawsuit and explains how to recover money under the settlement.

Your individual share of the settlement is estimated to be approximately **$[Class Member's Individual Payment Amount]**.  If you want to receive this payment, you do not need to take any action.

**[EXTRA INSERT FOR CURRENT NON-ADR CONTRACTORS ONLY:]**  You are also eligible to receive an additional **$3,000.00** if you agree to a Dispute Resolution Provision, which is described in greater detail in Section 14 below.  To receive an extra $3,000 payment, **you must sign and return the enclosed Dispute Resolution Form by the [insert date] post mark deadline**.

Please read this document carefully.

| 1. | What is the lawsuit about? |
|----|---------------------------|

The case was originally filed on July 15, 2016 in the United States District Court for the Eastern District of Tennessee.  On September 28, 2016, the case was transferred to the United States District Court for the Middle District of Pennsylvania, where it is currently pending.

This purported collective and class action lawsuit is brought by plaintiffs Michael Roxberry, Michelle Roxberry, Randy Perdue, Britt Manning, Tom Grutsch, Thomas Lee Smawley, Bob Johnson, Renae Riddle, and Makenzie Snyder (collectively, "Plaintiffs") against Snyder's-Lance, Inc., S-L Routes, LLC, and S-L Distribution Company, Inc. (collectively, "S-L" or "Defendants").  Plaintiffs owned, operated, and/or performed work for a distribution route pursuant to a Distributor Agreement with one or more Defendants for the purchase of snack food products sold by a Defendant.

The parties have reached a settlement of this lawsuit.  The settlement covers individuals and/or entities who opted in to this Action and individuals and/or entities in Tennessee who, either individually or through a business entity, owned, operated, and/or performed work for a distribution route pursuant to a Distributor Agreement with one or more Defendants for the

purchase and distribution of snack food products sold by a Defendant. These individuals are called "Class Members."

Plaintiffs allege that S-L violated the Fair Labor Standards Act by classifying them as independent contractors rather than employees. Plaintiffs argue that if they were classified as employees, S-L would have been prohibited from subjecting them to certain types of pay deductions and from requiring them to cover certain work-related expenses and would have been legally required to pay certain kinds of compensation to them, including overtime. The lawsuit also alleges claims under Tennessee law for unjust enrichment, breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Tennessee Consumer Protection Act. Plaintiffs seeks recover on their own behalf and on behalf of the Class Members.

S-L opposes the lawsuit. S-L has denied, and continues to deny, all of the allegations in the lawsuit and believes that it did not violate the law and has no liability for any of the claims alleged by Plaintiffs. Although S-L has vigorously contested the allegations in the lawsuit and denies that it has committed any wrongdoing or violation of law, S-L believes that further litigation of this would be protracted, expensive, and contrary to its best interests. By agreeing to settlement, S-L is not admitting liability on any of the allegations or claims in the case or that that the case can or should proceed on a collective or class basis.

The Court has not decided who will win the lawsuit.

| 2. | Why did I get this notice? |
|---|---|

You are an individual or an entity who, either individually or through a business entity, owned, operated, and/or performed work for a distribution route pursuant to a Distributor Agreement with one or more Defendants for the purchase and distribution of snack food products sold by a Defendant at some point between: (a) if in Tennessee, July 15, 2013 and July 15, 2017; and (b) if outside Tennessee, March 22, 2014 and July 15, 2017. This makes you a "Class Member" only for purposes of the settlement and eligible to receive a share of a court-approved settlement reached in this lawsuit.

The Court has granted preliminary approval of the settlement and ordered that this notice be sent to Class Members. As a Class Member, you have the right to participate in, exclude yourself from, or object to the settlement. This Notice describes your options under the settlement.

| 3. | What are my obligations under the settlement? |
|---|---|

As a condition of participating in the settlement, you agree:

- To take no action, directly or indirectly, to disclose or publish or reveal any information about the Settlement, including but not limited to issuing any press release(s), holding a press conference or commenting on the Action in any public forum or communications, or posting any information about the Settlement on a website.

- To take no action, directly or indirectly, to solicit additional individuals to pursue any claims that were alleged in, or could have been alleged in, this lawsuit against S-L.

| 4. | What does the settlement provide? |
|----|-----------------------------------|

If the Court grant final approval of the settlement, the gross amount of the settlement will be distributed as follows: (i) extra payments will be paid to each of the nine Plaintiffs who started the lawsuit; (ii) extra payments of $3,000 will be paid to certain eligible Class Members who, either individually or through a business entity, currently own, operate, and/or perform work for a distribution route pursuant to a Distributor Agreement that does not include a provision(s) referring certain disputes to alternative dispute resolution and agrees to a Dispute Resolution Provision; (iii) $560,000 will be paid to the lawyers representing the Plaintiffs identified in Section 10 below; and (iv) the balance will be distributed to Class Members as follows.

Each Class Member's share of the settlement is determined based on the number of "Contract Weeks" he/she, either individually or through a business entity, owned, operated, and/or performed work for a distribution route. "Contract Weeks" means: (a) for each Tennessee Class Member, the number of weeks between July 15, 2013 and July 15, 2017 in which the Class Member owned, operated, and/or performed work for a distribution route in Tennessee; and (b) for each non-Tennessee Class Member, the number of weeks between March 22, 2014 and July 15, 2017 in which the Class Member owned, operated, and/or performed work for a distribution route outside of Tennessee.

For each Class Member, the Individual Payment Amount is calculated based on the aggregate net amount of the settlement multiplied by the individual Class Member's Contract Weeks divided by the total combined Contract Weeks of all Class Members.

Under the settlement, you are entitled to an individual payment of approximately **$[insert recipient's Initial Payment Amount]**.

| 5. | How can I recover money? |
|----|--------------------------|

To participate in the settlement and receive an individual settlement payment, **you do not need to take any action**. If the Court approves the settlement, you will receive your settlement payment check by mail. You should not expect to receive your payment until after the Court dismisses the litigation and all rights to appeals are exhausted.

**[EXTRA INSERT FOR CURRENT NON-ADR CONTRACTORS ONLY:]** Additionally, you are eligible to receive an additional **$3,000** if you agree to a Dispute Resolution Provision, which is described in greater detail in Section 14 below. To receive an extra $3,000 payment, **you must sign and return the enclosed Dispute Resolution Form by the [insert date] post mark deadline**.

---

**6.    If I participate in and receive money under the settlement, what do I give up?**

By participating in and receiving money under the settlement, you agree to the following waiver and release of claims:

Upon the Effective Date,[1] in consideration of the benefits set forth in this Agreement, you, on behalf of yourself and your respective past, current and future heirs, spouses, administrators, executors, estates, attorneys, insurers, successors, assigns, agents, employees, representatives and all Distributor Entities and any other business entities in which you have performed services and/or you or any of you family members have or ever had an ownership interest and all past, current and future officers, directors, employees, owners, shareholders and members of all such Distributor Entities and business entities, hereby forever release, discharge and covenant not to sue the Released Parties[2] from and with respect to all, known and unknown, claims, causes of action, and/or demands arising through the Effective Date against the Released Parties alleging, arising from, or relating, in any way, to the claimed misclassification or treatment of a Class Member or the Class Members as independent contractors or non-employees, the alleged unjust enrichment by Defendants, any alleged breach of contract and breach of covenant of good faith and fair dealing in connection with Distributor Agreements, and/or any alleged unlawful, unfair, or deceptive acts or practices by Defendants affecting the conduct of trade or commerce, including all claims, causes of action and/or demands: (1) arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and/or any other federal, state or local law, statute, or regulation relating to wages, expenses, or compensation; (2) for unjust enrichment, quantum meruit, breach of contract, breach of the covenant of good faith and fair dealing, fraud or fraud in the inducement, conversion, theft of labor, or other common law cause of action related to any alleged failure to pay for work performed or to be performed or expenses incurred or arising out of, related to, or in connection with a Distributor Agreement; (3) arising under the Tennessee Consumer Protection Act at Sections 47-18-101 et seq. of the Tennessee Code, any other state consumer protection action, and/or any other similar or comparable federal, state or local law; (4) for unpaid or withheld compensation or wages, overtime, holiday pay, vacation pay or benefits, including, but not limited to, pension benefits; (5) for deductions from payments to you or any Class Members, for route loan payments, or for the failure to reimburse expenses that were paid or incurred by or for you or any Class Members, including claims for cost recovery, or cost reimbursement, mileage, vehicle expenses, and/or cost of returns or stales; (6) for failure to make accurate payments that are derivative of, or in any way related to, any wage and hour, overtime, benefit or other claims based upon your or the Class Members' alleged misclassification; (7) otherwise arising from your or the Class Members' alleged misclassification; and (8) for

---

[1] "Effective Date" means the later of (a) thirty-one (31) calendar days after the date the Court grants final approval of the settlement, or (b) if the Court's final approval order is appealed and is affirmed in all respects on appeal, with no possibility of subsequent appeal or other judicial review, ten (10) calendar days after the final resolution of the appeal.

[2] "Released Parties" means Defendants and any and all of their respective past, current and future parents, partners, joint venturers, subsidiaries, affiliates, shareholders, predecessors, agents, officers, directors, employees, heirs, spouses, administrators, executors, successors, assigns, representatives, insurers, attorneys, accountants and/or other persons and entities acting on any of their behalf.

compensatory damages, special damages, punitive damages, other damages, legal costs, expenses, attorneys' fees, penalties, insurance payments, interest, taxes and/or injunctive, declaratory or equitable relief which arise from or relate to the claims or causes of action described in Subparagraph (1) through Subparagraph (7) above under any federal, state or local laws, statutes or regulations (collectively, the "Released Claims"). The Released Claims include all claims and causes of action that were alleged in, or could have been alleged in, this lawsuit. Without limiting the generality of the preceding sentences, this release is intended as a full and complete release and discharge of and from all Released Claims by you and all Class Members who do not timely and validly exclude themselves from the Settlement. The parties acknowledge and agree that for a Class Member who has either (a) entered into an agreement to sell his route(s) to Defendants and the sale has not closed prior to the Final Approval of the Settlement Agreement, or (b) whose route(s) has terminated (voluntarily or involuntarily) but the sale of the route(s) has not closed prior to the Final Approval of the Settlement Agreement, the Released Claims shall not include a breach of contract claim for any payments that Class Member may be entitled to for the sale of such route(s).

If you have any questions about the scope or meaning of this release, you should call one of the attorneys listed in Section 10 below or consult with another attorney.

| 7. | How can I exclude myself from the settlement? |
|---|---|

You are not required to participate in the settlement. If you wish to be excluded from the settlement, you must return a signed written statement stating "I want to be excluded from the Roxberry v. S-L settlement" to the Settlement Administrator by the [insert date] postmark deadline.

If you exclude yourself from the settlement, you will not release any legal claims against S-L, and you will not receive a money payment. Also, you will not have any right to object to the settlement or appeal from a Court order approving the settlement.

| 8. | How can I object to the settlement? |
|---|---|

Unless you choose to exclude yourself from the settlement, you are entitled to object to the settlement if you believe that it is unfair. If you wish to object, you must return a signed letter stating your objection to the settlement by the [insert date] postmark deadline. Also, be sure the letter describes the reasons why you object. The letter may be handwritten. Your objections will be provided to the Court exactly as written and will be considered by the Court when it decides whether or not to approve the settlement.

You are not required to retain or consult with an attorney in making your objection. However, nothing prohibits you from retaining or consulting with any attorneys regarding the lawsuit, the settlement, or any concerns you may have about the settlement.

If you object to the settlement by following the above instructions, you also may personally appear at the hearing described in Section 12 below. At the hearing, you can address the Court and further explain the reasons for your objections.

Finally, if the Court approves the settlement over your objection, you will receive your settlement payment and will be bound by the waiver and release of legal claims summarized in Section 6 above, although you will have preserved your right to appeal from the Court order approving the settlement.

| 9. | What if I do nothing? |
|----|----|

If you do nothing:

- You will receive a settlement check upon the Court's final approval of the settlement; and

- You will be bound by the waiver and release of legal claims described in Section 6 above.

| 10. | Who is serving as my attorney? |
|----|----|

The Court has designated the following law firms to serve as "Class Counsel" and represent the Class Members' interests: (i) Winebrake & Santillo, LLC, 715 Twining Road, Suite 211, Dresher, PA 19025; Ph: 215-884-2491; email: pwinebrake@winebrakelaw.com.; and (ii) Woolf, McClane, Bright, Allen & Carpenter, PLLC, P.O. Box 900, Knoxville, Tennessee 37901-0900; Ph. (865) 215-1000; email: chatmaker@wmbac.com.

The above attorneys are available to answer your questions in strict confidence.

Also, nothing prohibits you from consulting with or retaining an attorney of your choice concerning the lawsuit, the settlement, or your rights under the settlement.

| 11. | How will the attorneys get paid? |
|----|----|

To date, the law firms identified in Section 10 above have worked on this lawsuit without receiving any payments for their time or expenses. Under the settlement, these law firms will ask the Court for attorneys' fees and expenses totaling approximately $560,000.

You will not pay any attorney's fees or expenses out of your individual settlement payment.

| 12. | When and where will the Court decide whether to approve the settlement? |
|----|----|

The Court will hold a final approval hearing to decide whether to approve the settlement. You are not required or expected to attend that hearing. However, you are welcome to attend.

The hearing will take place on _____, 2017 at _____ [a.m./p.m.] at the Ronald Regan Federal Building and U.S. Courthouse, 228 Walnut Street, Harrisburg, PA 17108.  During the hearing, the Court will consider whether the settlement is fair and reasonable and should be approved. The Court also will consider all written objections to the settlement and will hear from any other Class Member who wishes to be heard.

---

**13.    How do I obtain more information?**

---

This Notice summarizes the most important aspects of the proposed settlement. You can obtain further information by calling one of the law firms listed in Section 10 above.

**[EXTRA INSERT FOR CURRENT ADR CONTRACTORS ONLY:]**

---

**14.    What is the Dispute Resolution Provision and how does it affect me?**

---

Based on S-L's records, you currently own, operate, and/or perform work for a distribution route pursuant to a Distributor Agreement that does not include a provision(s) referring certain disputes to alternative dispute resolution.

You will find enclosed a Dispute Resolution Provision.

The Dispute Resolution Provision provides new processes and procedures for resolving future legal disputes you may have with S-L.  The Class Counsel identified in Section 10 above believe that the Dispute Resolution Provision benefits you by: (i) creating a clear and informal process for resolving disputes; (ii) enabling legal claims, with some exceptions, to be resolved by a neutral arbitrator agreed upon by the parties and assigned by the American Arbitration Association; (iii) requiring S-L to pay almost all of the fees and expenses associated with arbitration; (iv) allowing the resolution of arbitrated legal claims to be held in or near the county in which the Territory is located; and (v) placing no limitations on the claims or theories available to you in that dispute-resolution process.  On the other hand, the Dispute Resolution Provision contains other provisions that may not benefit you.  These provisions include: (i) giving up the right to have legal claims decided in court; (ii) giving up the right to have certain legal claims decided by a jury; and (iii) giving up the right to pursue certain legal claims through class or collective litigation.

You should carefully read the Dispute Resolution Provision. If you have any questions or desire any additional information, you should either call Class Counsel at one of the phone numbers listed in Section 10 above or consult with another attorney of your choosing.

Whether to agree to the Dispute Resolution Provision is entirely your choice and does not impact your ability to otherwise participate in the settlement or recover money under the settlement.

If you agree to the Dispute Resolution Provision, **you will receive an extra $3,000 payment** as consideration for agreeing to be bound by the Dispute Resolution Provision. Please note that this $3,000 payment is in addition to your anticipated settlement payment of **$[insert Class Member's Individual Payment Amount]**, as described in Section 4 above.

To receive the extra $3,000 payment, you must sign and return the first page of the Dispute Resolution Form to the Settlement Administrator by the **[insert date] postmark deadline.**

A pre-addressed, postage-paid envelope is enclosed for your convenience. The Settlement Administrator's address is [insert mailing address].

# Exhibit C

**DISPUTE RESOLUTION RESPONSE FORM**
*Roxberry, et al. v. Snyder's-Lance, Inc., et al.*
*United States District Court for the Middle District of Pennsylvania*
*Case No. 1:16-cv-02009-JEJ*

**IF YOU AGREE TO THE DISPUTE RESOLUTION PROVISION AND
TO RECEIVE AN EXTRA $3,000 PAYMENT,
COMPLETE AND RETURN THIS FORM
POSTMARKED NO LATER THAN [_____].**

I have read the enclosed **Dispute Resolution Provision.**

I, on behalf of myself and any business entity owned, in whole or in part, or operated by me, agree to resolve all future disputes with Defendants and/or pertaining to the Current Distributor Agreement with Snyder's-Lance, Inc., S-L Routes, LLC, and/or S-L Distribution Company, Inc. (now known as S-L Distribution Company, LLC) pursuant to the Dispute Resolution Provision attached to the Collective and Class Action Settlement Notice, which Dispute Resolution Provision shall amend and be incorporated into the Current Distributor Agreement.  I understand that **I will receive an additional $3,000 payment**, and other good and valuable consideration, in exchange for this agreement.

_____          _____
**Signature**                                        **Distributor Entity Name**

_____          _____
**Name (print clearly)**                             **Date**

9

## DISPUTE RESOLUTION PROVISION

For good and valuable consideration, the receipt, adequacy and sufficiency of which is hereby acknowledged, including, but not limited to, the payments made to Distributor (defined below) through the Confidential Settlement Agreement and Release for *Michael Roxberry, et al. v. Snyder's-Lance, Inc., et al.*, Case No. 1:16-cv-02009-JEJ in the United States District Court for the Middle District of Pennsylvania ("Settlement"), and intending to be legally bound, S-L (defined below) and Distributor agree, upon the execution by Distributor of a Dispute Resolution Response Form and the approval of the Settlement by the Court, as follows:

1.1    **DISPUTE RESOLUTION PROCESS - EXCLUSIVE PROCESS**.  This Dispute Resolution Provision ("Provision") is, and sets forth, the sole and exclusive method by which any and all Covered Disputes (defined below) shall be resolved between a Distributor ("Distributor"), having a Distributor Agreement ("Distributor Agreement") with Snyder's-Lance, Inc., S-L Routes, LLC, and/or S-L Distribution Company, Inc. (now known as S-L Distribution Company, LLC) (collectively, "S-L") for a territory ("Territory"), and S-L. This Provision shall be an amendment to the Distributor Agreement between Distributor and S-L and it shall be included as a part of, and incorporated into, the Distributor Agreement.

1.2    **NOTICE OF DISPUTE**.  In the event of any Covered Dispute, the party initiating the Covered Dispute must provide, by First Class Certified United States Mail or overnight mail (e.g., UPS or FedEx), written notice of each Covered Dispute to the other party ("Notice"). A Distributor shall mail Notice to:

> S-L Distribution Company Inc.
>
> ATTN: Legal Department,
>
> P.O. Box 6917, 1250 York Street
>
> Hanover, Pennsylvania 17331

S-L shall mail Notice to a Distributor's address set forth in the Distributor Agreement.

The Notice must state the claim with sufficient detail to identify the claim as a Covered Dispute. The Notice, and the subsequent informal meeting (described below), are required before any Covered Dispute may proceed to binding arbitration.

1.3    **INFORMAL MEETING**.  Upon receiving Notice of a Covered Dispute under Section 1.2, an authorized representative of S-L and an authorized representative of the Distributor must meet in-person and confer regarding the Covered Dispute, and must make a

good faith effort to resolve the Covered Dispute at the meeting. The meeting must be held within fourteen (14) business days of receipt of the Notice, unless mutually agreed, in writing, to be held at a later date.

       1.4     **BINDING MUTUAL ARBITRATION**.  If the parties are unable to mutually resolve a Covered Dispute through an informal meeting as required by Section 1.3, the party initiating the Covered Dispute may then initiate mandatory final and binding arbitration in conformance with this Provision.  This agreement to arbitrate applies with respect to all Covered Disputes, whether initiated by the Distributor or S-L.

       1.5     **FILING FOR ARBITRATION**.

       A.     <u>Initiation by Distributor</u>.  To initiate arbitration, the Distributor shall file, either electronically via the American Arbitration Association ("AAA") website, or by mail, a demand for arbitration, on a fully completed, then current AAA Commercial Demand for Arbitration Form ("Demand") (available at https://www.adr.org/aaa) with the AAA, along with a copy of the Distributor Agreement and this Provision and $200.00, constituting Distributor's portion of the filing fee. Within two days of filing, Distributor shall send, by First Class Certified United States Mail or overnight mail (e.g., UPS or FedEx), a copy of the Demand to S-L at the following address:

S-L Distribution Company Inc.

ATTN: Legal Department,

P.O. Box 6917, 1250 York Street

Hanover, Pennsylvania 17331

The Demand must be filed with the AAA within the time period provided by the limitations period and/or the statute of limitations applicable to the claim(s) set forth in the Demand. The date upon which the Demand is sent to the AAA shall be the date that the arbitration is initiated for purposes of the limitations period and/or statute of limitations applicable to the claim(s) asserted. As set forth more fully in Section 1.9 below, S-L will pay all arbitration filing fees, except for $200.00, if an arbitration for the Covered Dispute is initiated by the Distributor in conformance with this Provision.

       B.     <u>Initiation by S-L</u>. To initiate arbitration, S-L shall file, either electronically via the AAA website, or by mail, a Demand with the AAA, along with a copy of the Distributor Agreement and this Provision and all filing fees required by the AAA Rules (defined below).

Within two days of filing, S-L shall send by First Class Certified United States Mail or overnight mail (e.g., UPS or FedEx), a copy of the Demand to the Distributor's address set forth in the Distributor Agreement. The Demand must be filed with the AAA within the time period provided by the limitations period and/or statute of limitations applicable to the claim(s) set forth in the Demand. The date upon which the Demand is sent to the AAA shall be the date that the arbitration is initiated for purposes of the limitations period and/or statute of limitations applicable to the claim(s) asserted.

      1.6    **<u>SELECTION AND RULES</u>**. The Distributor and S-L agree that any arbitration of a Covered Dispute shall be resolved through the AAA pursuant to its Commercial Arbitration Rules in effect at the time of the filing of the Demand with the AAA ("AAA Rules"), EXCEPT for the following:

      A.    <u>Arbitrator(s)</u>.  The arbitration shall be conducted before a single arbitrator, unless all parties to the arbitration agree otherwise in writing, to be appointed in the manner provided by the AAA Rules. No person shall serve as arbitrator for any matter in which that person has any financial or personal interest in the result of, or subject matter of, the proceeding or a past or present relationship with the parties or their counsel. Prior to accepting appointment, the prospective arbitrator(s) shall disclose any circumstance likely to prevent a prompt hearing or to create an appearance or presumption of bias or conflict. Upon receipt of such information, the AAA either will replace that person or communicate the information to the parties for their comment. Thereafter, the AAA may disqualify that person, and its decision shall be conclusive. Vacancies shall be filled in accordance with the AAA Rules.

      B.    <u>Location</u>. The arbitration shall be held in or near the county in which the Territory is located, unless S-L and the Distributor mutually agree to some other location.

      C.    <u>Proceedings</u>.  The hearing shall be conducted by the arbitrator in accordance with the AAA Rules and in whatever manner will most expeditiously permit full presentation of evidence and arguments of the parties. The arbitrator shall set the date, time, and place of the hearing, notice of which must be given to the parties by the AAA in accordance with the AAA Rules, but in any case, at least 30 calendar days in advance of the hearing unless the parties jointly agree otherwise.

      D.    <u>Length of Hearing</u>.  Notwithstanding anything to the contrary set forth in this Provision, the hearing for a Demand that is subject to and qualifies for the Expedited Rules

of the AAA in effect at the time the Demand is filed with the AAA shall last no longer than one hearing day. The hearing for all other Demands shall last no longer than three total hearing days, all of which shall be consecutive days absent very good cause shown not to have the hearing conducted on consecutive hearing days.

E.     <u>Representation</u>.  Any party may be represented by an attorney or other representative or by itself, himself or herself. For a party without representation, the AAA, as applicable, may, upon request, provide reference to institutions that might offer assistance.

F.     <u>Confidentiality of and attendance at hearing</u>. The arbitrator(s) and the parties shall maintain the confidentiality of the hearings unless the applicable law provides to the contrary. The arbitrator(s) shall have the authority to exclude witnesses, other than a party and the party's representative(s), from the hearing during the testimony of any other witness. The arbitrator(s) also shall have the authority to decide whether any person who is not a witness may attend the hearing.

G.     <u>Postponement</u>.  The arbitrator(s) for good cause shown may postpone any hearing upon the request of a party or upon the arbitrator's own initiative and shall grant such postponement when all of the parties agree thereto.

H.     <u>Oaths</u>. Before proceeding with the first hearing day, the arbitrator(s) may take an oath of office and, if required by law, shall do so. The arbitrator(s) may require a witness to testify under oath administered by any duly qualified person and, if required by law or requested by any party, shall do so.

I.     <u>Stenographic Record</u>.  Any party may request a stenographic record of the hearing and the requesting party shall bear the cost of such record. If both parties request a stenographic record, the cost shall be borne equally by the parties. In the event the Distributor requests a stenographic record, S-L shall bear the cost of obtaining a copy of the record for itself. In the event only S-L requests a stenographic record, S-L shall bear the cost of providing a copy to the Distributor.

J.     <u>Arbitration in the Absence of a Party</u>.  Unless the AAA Rules or the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party, but instead, the arbitrator(s) shall require the party who is present to submit such evidence as the arbitrator(s) may require for the making of the award.

K.    Discovery.  Discovery requests shall be made pursuant to the AAA Rules.

L.    Motions. The parties may file and the arbitrator(s) shall be authorized to hear and decide at any point in the proceedings any motion permitted by the Federal Rules of Civil Procedure, including, but not limited to: motions for protective orders; motions to dismiss; motions for summary judgment; and motions in limine.

M.    Evidence.  The arbitrator(s) shall be the judge of the relevance and materiality of the evidence offered; conformity to legal rules of evidence shall not be necessary.

N.    Evidence by Affidavit and Filing of Documents.  The arbitrator(s) may receive and consider the evidence of witnesses by affidavit but shall give it only such weight as the arbitrator(s) deems it entitled to after consideration of any objection made to its admission. All documents and affidavits to be considered by the arbitrator(s) shall be provided to the other party and the arbitrator(s) prior to the hearing.

O.    Burden of Proof.  The arbitration shall be subject to the same burdens of proof as if the Covered Dispute was being heard in federal district court.

P.    Closing of Hearing.  Subject to subsection D above, the arbitrator(s) shall ask whether the parties have any further proof to offer or witnesses to be heard. Upon receiving negative replies from all parties, or if otherwise satisfied that the record is complete, the arbitrator(s) shall declare the hearing closed.

Q.    Waiver of Procedures. Any party who proceeds with the arbitration with knowledge that any provision or requirement of this Provision has not been complied with, and who fails to state objections thereto in writing, shall be deemed to have waived the right to object.

R.    Conflict. To the extent any of the terms, conditions or requirements of this Provision conflict with the AAA Rules or other applicable rules, the terms, conditions and requirements of this Provision shall govern.

1.7    **ARBITRATION AWARD**.  The arbitrator( s) shall make the award within thirty (30) days of the close of the hearing or as soon as possible thereafter, unless otherwise agreed by the parties or specified by the AAA Rules or applicable law.

A.    Form.  The award shall be in writing, setting forth an explanation for the award, and shall be signed by the arbitrator(s). All awards shall be executed in the manner

required by law. The award shall be final and binding upon the Distributor and S-L, and any judicial review or appeal shall be as provided by law.

        B.     <u>Scope of Relief</u>.  The arbitrator(s) shall be governed by applicable federal, state, and/or local law. The arbitrator(s) shall award relief only on an individual basis. The arbitrator( s) shall have the authority to award any damages, injunctive relief, or other relief, to the full extent permitted by applicable law and the Distributor Agreement. The arbitrator(s) shall not have the authority to make any award that is arbitrary and capricious or to award to S-L the costs of the arbitration that S-L is otherwise required to bear under this Provision.

      1.8    **<u>DELIVERY OF AWARD TO PARTIES</u>**. The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail addressed to a party or its representative at the last known address via certified mail, return receipt, personal service of the award, or the filing of the award in any manner that is permitted by law.

      1.9    **<u>EXPENSES AND FEES</u>**.  Unless otherwise precluded by applicable law, expenses and fees shall be paid and/or allocated as follows:

        A.     <u>Filing fees</u>. S-L shall pay any filing fee required by the AAA, except that if the arbitration is demanded by the Distributor, the Distributor shall be required to pay $200.00 of the filing fee, which shall be paid by the Distributor when the Demand is filed with the AAA as provided in Section 1.5 .A above. If the Distributor does not pay the $200.00 to the AAA when the Demand is filed, the Demand shall be deemed to have been withdrawn by the Distributor for all purposes.

        B.     <u>Hearing Fees and Arbitrator Fees</u>. S-L shall pay the arbitrator fees.

        C.     <u>Postponement/Cancellation Fees</u>.  Postponement and cancellation fees shall be payable, at the discretion of the arbitrator, by the party requesting or causing the postponement or cancellation.

        D.     <u>Other Expenses</u>.  The expenses of witnesses shall be paid by the party requiring the presence of such witnesses, including any witness fee or subpoena fees ordered or required by the arbitrator for such witnesses. All other ordinary and reasonable expenses of the arbitration, including hearing room expenses, travel expenses of the arbitrator and any witness produced at the arbitrator's direction, shall be paid by S-L.

E.    <u>Legal Fees and Expenses</u>. Each party shall pay its own attorneys' fees, legal fees and expenses. The arbitrator(s) may award attorneys' fees to a prevailing party if, and as, expressly permitted by applicable law.

F.    <u>Arbitrator Award</u>.  The allocation of expenses as provided for in items "A" through "D" of this Section may not be disturbed by the arbitrator except where the arbitrator determines that a party's claims were frivolous or were asserted in bad faith.

1.10    **SERVING OF NOTICE**.  Any notices, process or communication necessary or proper under this Provision or the AAA Rules, including a Notice, a Demand or a notice for the initiation or continuation of an arbitration under this Provision, for any court action in connection therewith or for the entry of judgment on an award made under this Provision, shall be served on a party by First Class Certified United States mail, or overnight mail, addressed to the party or its representative, or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard thereto is provided to the party. If service is attempted by First Class Certified United States mail or overnight mail and the mail is returned with a notation that the addressee refused to accept the mail or that it was unclaimed, service may be made by mailing a copy to the same address by ordinary United States mail with the return address of the sender appearing thereon, and such service by ordinary mail shall be deemed completed if the mail is not returned to the sender within ten days after mailing. The AAA and the parties also may use facsimile transmission, telex, telegram, or other written forms of electronic communication to give the notices required by this Provision, provided that such notice is confirmed by the telephone or subsequent mailing to all affected parties. Service on the other party must be simultaneous with the filing and be made by the same means.

1.11    **ENFORCEMENT**.  The award of the arbitrator(s) may be enforced under the terms of the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) ("FAA") to the extent applicable and/or under any applicable state law. If a court determines that the award is not completely enforceable, the award shall be enforced and binding on both parties to the maximum extent permitted by law.

1.12    **JUDICIAL PROCEEDINGS AND EXCLUSION OF LIABILITY**.  Neither the AAA, nor any arbitrator in a proceeding under this Provision, is a necessary party in judicial proceedings relating to the arbitration. The parties to this Provision shall be deemed to have

consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

1.13    **TIME PERIOD FOR ARBITRATION**.  Any proceeding under this Provision shall be brought within the time period provided within the limitation period(s) or statute(s) of limitations applicable to the claims asserted in the Demand.

1.14    **INTERPRETATION AND APPLICATION OF PROCEDURE**.  Except as set forth in Sections 1.16 and/or 1.17 below, the arbitrator(s) shall interpret and apply this Provision as it relates to the arbitrator's powers and duties for Covered Disputes.

1.15    **COVERED DISPUTES**.  Except for Excluded Disputes (defined below), Covered Disputes shall include any and all claims, disputes, suits or causes of action between Distributor, its/his/her predecessors and/or successors and/or its/his/her and their respective past, current and/or future owners, officers, directors, employees, shareholders, members, managers, partners, beneficiaries, administrators, executors, estates, attorneys, insurers, assigns, agents, representatives and/or all business entities in which they have, may have or ever had an ownership interest (collectively, the "Distributor Parties") and S-L, its predecessors and/or successors and/or its and their respective past, current and/or future officers, directors, employees, shareholders, members, managers, partners, insurers, assigns, agents and/or representatives (collectively, the "S-L Parties"), including, but not limited to: all claims and disputes arising out of or under or relating to this Provision; all claims and disputes arising out of or under or in any way relating to the Distributor Agreement or any other agreement between the parties, including any claim for a breach or termination thereof, and/or the Territory; and all claims and disputes relating to any allegation of any employment, franchise or other non-independent contractor relationship or misclassification between any of the Distributor Parties and any of the S-L Parties and including, but not limited to, all claims and disputes pertaining to: contract, tort, defamation, fraud, equity and/or other common law claims, wage and hour claims, overtime claims, holiday and vacation pay claims, pension claims, benefit claims, recovery or reimbursement claims, discrimination, harassment and retaliation claims and claims arising under or relating to any federal, state or local constitution, statute, law or regulation, whether now or hereafter existing.

1.16    **EXCLUDED DISPUTES**.  The following claims and disputes are not Covered Disputes, and are not subject to this Provision or arbitration: (i) claims relating to specific

performance of this Provision; (ii) claims or cross-claims relating to contribution, indemnification or subrogation in connection with a claim by a third-party against a Distributor Party and/or a S-L Party; (iii) applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration; (iv) claims relating to the use or misuse of trade names, trademarks or intellectual property of an S-L Party; (v) claims related to the use or misuse of alleged confidential trade secrets and proprietary business information of an S-L Party; and (vi) any claim that is expressly precluded from arbitration by an applicable federal law, statute or regulation. Nothing set forth herein waives the Distributor's right to file a charge or complaint with any federal, state, or local administrative agency if such claim is expressly precluded from arbitration under applicable law and such law is not preempted by the FAA; however, any Covered Dispute that is not so precluded must be submitted to arbitration in accordance with this Provision.

     1.17   **WAIVER**.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE DISTRIBUTOR HEREBY AGREES, ON ITS/HIS/HER BEHALF AND ON BEHALF OF ITS/HIS/HER PAST, CURRENT AND FUTURE OWNERS, OFFICERS, DIRECTORS, EMPLOYEES, SHAREHOLDERS, MEMBERS, MANAGERS, PARTNERS, PREDECESSORS, SUCCESSORS, BENEFICIARIES, ADMINISTRATORS, EXECUTORS, ESTATES, ATTORNEYS, INSURERS, AGENTS, REPRESENTATIVES, AND ASSIGNS, TO BRING ANY AND ALL CLAIMS, DISPUTES, SUITS AND/OR CAUSES OF ACTION FOR A COVERED DISPUTE ONLY ON AN INDIVIDUAL BASIS AND WAIVES ANY AND ALL RIGHTS TO: (I) INITIATE OR MAINTAIN ANY CLAIM, DISPUTE, SUIT OR CAUSE OF ACTION RELATING TO, OR ASSERTING, IN WHOLE OR IN PART, ANY COVERED DISPUTE ON A CLASS ACTION BASIS, COLLECTIVE ACTION BASIS, MULTIPLE PLAINTIFF BASIS OR REPRESENTATIVE ACTION BASIS, EITHER IN COURT OR IN ARBITRATION, AGAINST S-L AND/OR THE S-L PARTIES; (II) SERVE OR PARTICIPATE AS A REPRESENTATIVE IN ANY SUCH CLASS ACTION, COLLECTIVE ACTION, MULTIPLE PLAINTIFF OR REPRESENTATIVE ACTION; (III) SERVE OR PARTICIPATE AS A MEMBER OF ANY SUCH CLASS ACTION, COLLECTIVE ACTION, MULTIPLE PLAINTIFF OR REPRESENTATIVE ACTION; OR (IV) RECOVER OR RECEIVE ANY DAMAGES OR RELIEF IN CONNECTION WITH ANY SUCH CLASS ACTION, COLLECTIVE ACTION, MULTIPLE PLAINTIFF OR

REPRESENTATIVE ACTION, other than the class action settlement of *Michael Roxberry, et al. v. Snyder's-Lance, Inc., et al.* The Distributor further agrees that if it is included within any such class, collective, multiple plaintiff or representative action, it shall take all steps necessary to promptly and fully opt-out of the action or refrain from opting in, as the case may be. The Distributor further agrees that no arbitrator shall have authority to: (i) order, authorize, or permit any notice or information about an arbitration or any claims or defenses in an arbitration to be sent to any class or group of persons other than the parties to the individual arbitration, provided that any party or the arbitrator may compel testimony of a witness or the production of documents, material or information consistent with the AAA Rules; or (ii) order or require either party to produce any kind of contact or other information for any class or group of current or former distributors of S-L or the S-L Parties; or (iii) consolidate an arbitration with any arbitration proceeding brought by any other person or entity; or (iv) to conduct an arbitration on a class action, collective action, multiple plaintiff or representative action basis. Any Covered Dispute filed or brought in court or arbitration as a class, collective, multiple plaintiff or representative action shall be promptly dismissed by the Distributor, or if not by the court or arbitrator(s), and shall be decided in arbitration on an individual basis. Any issue concerning the validity or enforceability of the waiver in this Provision (including the prohibition against class, collective, multiple plaintiff or representative action arbitration) shall be decided by a court of competent jurisdiction and having proper venue as provided in the Distributor Agreement, and no arbitrator shall have any authority to consider or decide any issue concerning the validity or enforceability of the waiver. Any issue concerning arbitrability of a particular issue or claim pursuant to this Provision (except for those concerning the validity or enforceability of the waiver) must be resolved by the arbitrator, not the court.

      1.18    **SEVERABILITY**. If any part or provision of this Provision is held to be invalid, illegal, or unenforceable, such holding shall not affect the legality, validity, or enforceability of the remaining parts, and such remaining parts of this Provision shall be valid, legal, and enforceable to the fullest extent permitted by law.

      1.19    **INTERPRETATION OF THIS PROVISION**. Any dispute regarding the scope, application, enforcement or interpretation of the provisions and procedures set forth in this Provision shall be governed by the FAA and to the extent the FAA is inapplicable, the laws

of the Commonwealth of Pennsylvania shall apply. Nothing contained in this Provision shall affect a determination of the substantive law that shall govern the claims asserted in a Demand.

       1.20    **<u>DISTRIBUTOR AGREEMENT</u>**. Except as expressly amended hereby and set forth herein, the terms and provisions of the Distributor Agreement shall remain in full force and effect.